## Gallagher *v.* Snellenburg, Appellant.

*Negligence—Elevators—Master and servant—Evidence—Contributory negligence—Instructions.*

The duty of instruction due by a master to a servant does not require warning against such dangers as are the subject of common knowledge, or are open and apparent to ordinary observation.

In an action by a workman against his employers to recover damages for personal injuries sustained by a fall down an elevator shaft in a large department store, it appeared that the plaintiff at the time of the accident

was engaged in taking water in buckets to the upper floors.  In doing his work he used a truck, loading it with buckets and pushing it on to the elevator.  At the floor where the water was needed he pushed the truck off the elevator to the point desired.  On a return trip to the elevator he pushed the truck through the open door without apparently looking ahead. The elevator was not there, and the truck and plaintiff fell down the shaft. The elevator was not intended for the use merely of the plaintiff, but was for the use of any of the employees who might need it, and it could be put in motion by reaching into the shaft from any of the floors and pulling a wire rope.  It did not appear from the evidence how the elevator had been moved.  It was shown, however, to have been in good condition immediately after the accident.  There were electric lights in the elevator shaft and others in the vicinity.  Plaintiff had been working for about four weeks in carrying water, and had never complained of any lack of light. Plaintiff claimed that the defendants were negligent in failing to instruct him properly as to the use of the elevator.  *Held,* that it was error to submit the case to the jury, and that a judgment on a verdict for the plaintiff should be reversed without a venire.

Argued Jan. 18, 1905.  Appeal, No. 322, Jan. T., 1904, by defendants, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1901, No. 1047, on verdict for plaintiff in case of John Gallagher v. N. Snellenburg & Co.  Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Trespass to recover damages for personal injuries.  Before BARRATT, J.

The circumstances of the accident are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $12,500.  Defendants appealed.

*Error assigned* was in refusing binding instructions for defendants.

*Thomas Leaming,* with him *Alex. Simpson, Jr.,* for appellants. —There was no evidence to support the allegation that the elevator shaft or the elevator itself were improperly constructed or in bad order: Delaware River Iron Ship-Building Co. v. Nuttall, 119 Pa. 149; Titus v. Bradford, etc., R. R. Co., 136 Pa. 618 ; Cunningham v. Fort Pitt Bridge Works, 197 Pa. 625 ; Kilbride v. Carbon Dioxide, etc., Co., 201 Pa. 552.

There was no evidence to support the allegation of insufficient

light: Devlin v. Phœnix Iron Co., 182 Pa. 109; Prescott v. Ball Engine Co., 176 Pa. 459.

The plaintiff was guilty of contributory negligence: Bemisch v. Roberts, 143 Pa. 1; Stackhouse v. Vendig, 166 Pa. 582; Ingram v. Lehigh Coal, etc., Co., 148 Pa. 177.

The error in refusing binding instructions was emphasized by submitting the case to the jury upon a theory of negligence which had not been alleged and which the court told the jury had not been proved: Cunningham v. Fort Pitt Bridge Works, 197 Pa. 625.

*Henry J. Scott*, with him *James W. King*, for appellee, cited: Laib v. Penna. R. R. Co., 180 Pa. 503; Bard v. P. & R. Ry. Co., 199 Pa. 94.

OPINION BY MR. JUSTICE POTTER, February 20,.1905:

The plaintiff in this case seeks to recover damages for personal injuries caused by falling down an elevator shaft. He was employed by the defendants as a laborer, and among other duties assigned him was that of taking hot water in buckets up to the scrub women who were engaged on the various floors of the building in cleaning the premises at night. The method which he pursued, under instructions, was to load a truck in the basement with buckets of hot water, push the truck on an elevator, and then by means of a controlling rope start the elevator upward, stop it at any desired floor, and push the truck out through the elevator door, upon the floor, and to the point where the women were at work. The empty buckets were in turn placed upon the truck and wheeled back to and upon the elevator, and thus lowered to the basement.

At the time of the accident the plaintiff had been engaged in conveying water and in the other duties for which he was employed by the defendants, during a period of nearly four weeks. His hours of service were from half past six o'clock at night until six o'clock in the morning. The story of the accident which resulted so disastrously is thus told by him in his own words: "On the 2d of January 1900, between three o'clock and four o'clock in the morning, I was taking up this truck. I stopped at the second floor and pushed my truck off as usual, went to where they (the women) were, about

100 feet from the elevator, perhaps more, and unloaded the truck, came back again, and put some more buckets on and came back to the elevator again, and I pushed it right to the elevator. The elevator looked to me like as it was when I left it. I pushed the truck along and went right in, and that is all I know. The elevator wasn't there."

The negligence charged in the declaration is, in the first place, that the defendants did not furnish sufficient light for the plaintiff to see in the performance of his work. It does not appear, however, from the evidence that plaintiff made any complaint as to lack of light or even that he felt himself in any way incommoded thereby. At the time he was hurt he had been at the service for nearly four weeks, and neither during that period nor upon the night when the accident occurred does he say that he had not sufficient light to enable him to do his work properly or in safety. The testimony shows that an arc electric light burned about seventy-five feet from the elevator, although partially interrupted by a glass partition. There were also incandescent electric lights in the elevator shaft, and one witness at least, says that these would show where the elevator was if one looked into the shaft. One of the night watchmen, in testifying as to the regulations concerning the lights, said that the employees when engaged in cleaning the premises had the privilege of using whatever lights were needed to enable them to see to do the work. The plaintiff does not testify that he suffered any inconvenience in doing his work owing to any lack of light, nor does he say that by reason of the darkness he was unable to see whether the elevator was in place before he pushed his truck in and stepped after it down the shaft.

Defendants were also charged in the statement with furnishing an unsafe, insecure and improper elevator; but the proofs did not sustain the charge either of providing insufficient light, or an unsafe elevator; and the trial judge so instructed the jury. The inspector of elevators, who examined the elevator after the accident, said that he found it in good shape in so far as the driving power and the controlling gear were concerned, and that it was equipped as the law required freight elevators to be, with the exception of an automatic terminal stop. This latter device, however, only came into

play at the top and bottom landings and therefore had nothing whatever to do with the accident. The elevator did not fall with the plaintiff, there was no break in the machinery, nor was anything shown to be out of order. The elevator was used immediately after the accident by one of the watchmen, and appears to have remained in use without any necessity for repair. In fact, the hurt which the plaintiff received was not owing in any sense to the use of the elevator. It was its absence when he desired and intended to use it, which led to his misfortune. He was injured by falling down the elevator shaft, into which he had deliberately walked under the supposition that the elevator was still at the landing, where he had left it a few moments before. But how could he have made such a disastrous mistake, when a reasonable use of his eyes must have shown him that the elevator was not there to receive him when he stepped from the solid floor? He was pushing the truck containing the buckets, ahead of him, and it seems almost incredible that the fall of the truck which preceded him into the shaft, should not have warned him in time to stay his steps upon the solid floor, had he been giving heed to what he was doing.

It appears from the evidence that the elevator was not intended for the use merely of the plaintiff, but was for the use of any of the employees who might need it, and that it could be put in motion by reaching into the shaft from any one of the six floors, and pulling a wire rope. The watchmen used it at intervals, but whether or not it was moved by one of them after the plaintiff left it, does not appear from the testimony. But no matter by whom the elevator may have been moved, nothing could excuse the plaintiff from using his senses to guard himself from walking into an open shaft.

The trial judge refused binding instructions in favor of the defendants, and submitted the case to the jury upon the one thing which, under the evidence, he said was open for their consideration. In so doing he said to the jury: "Now, did the defendant company properly instruct the plaintiff in the use of this elevator, so that he knew the danger of it? If they did, I instruct you that there is nothing else for you to consider, even if you have found that the plaintiff was not guilty of contributory negligence, and your verdict will have to be for the defendants." There was no occasion for suggesting to the jury

any such line of inquiry, for neither in his declaration did the plaintiff charge, nor in his testimony did he prove, any negligence against the defendants in failing to properly instruct him as to the use of the elevator. As a matter of fact, what could have been said to the plaintiff by way of warning against the possibility of such an accident as this? Nothing more than to remind him that in case he left the elevator unoccupied at a landing, some other employee, who had an equal right to its use, might move it away in his absence; or that it might possibly move of itself; and that he, therefore, upon his return, must, before stepping into the shaft, be sure to look to see if the elevator was there. But such a danger as that of stepping into an open shaft would be so obvious as to require no warning to any reasonably prudent man. As we said in Cracraft v. Bessemer Limestone Co., 210 Pa. 15, " Generally speaking, the duty of an employer to give information to an employee, as to the particular perils and dangers of the service in which he is engaged, is unquestioned. But this duty does not require warning against such dangers as are the subject of common knowledge, or are open and apparent to ordinary observation."

It would be hard to imagine a case in which negligence could be more conspicuous than was that of the plaintiff in the present case. The elevator cage was an object of considerable size, with floor, top and sides, all sufficient to give ample notice of its presence, and to be readily missed if absent. There was no hidden or latent danger, for a glance would have shown the plaintiff the absence of the cage, had he looked for it, when approaching the elevator shaft upon his return with the truck.

To permit a recovery upon the theory that the plaintiff was not properly instructed in the use of the elevator, which was the only ground upon which this case was submitted to the jury, by the trial judge, would be to base it upon a theory, which was neither pleaded by the plaintiff nor proved. It is very much to be regretted that the results of accidents such as this should fall with such crushing force upon those ill able to sustain such a burden. But the law does not hold employers responsible as insurers against accident, and nothing short of that would enable the plaintiff to recover under the evidence in this case. The assignment of error is sustained and the judgment is reversed.