## Owens v. Peoples Passenger Ry., Appellant.

*Street railway—Municipalities—Negligence—Contributory negligence.*

The consent of a municipality to the occupancy of a street by a street railway company is not destructive of the right of the municipality to repair or construct works necessary for the health of its inhabitants or the protection of their persons or property; and an employee of the municipality engaged in such work within the space occupied by the railway company's tracks is not a trespasser.

Plaintiff, an employee of a city, was engaged in laying a waterpipe under defendant's track. A ditch five feet deep had been dug under and at right angles to the track, and plaintiff, in lifting the pipe to be placed in the ditch, was compelled to stand over the rail and in the car track, with his back towards approaching cars. The cars were drawn over the ditch by the horses attached to a rope and driven in the side of the street outside of the tracks. It was not contradicted that on all other occasions defendant's employees had notified the city's employees that a car was about to be worked over the ditch, but on the occasion when plaintiff was injured, no warning was given, and the car ran into plaintiff and injured him. *Held,* that both the question of plaintiff's contributory negligence and defendant's negligence was for the jury.

*Damages—Instructions.*

In an action for personal injuries, the court in one part of the charge said: "Give this man, if he is entitled to compensation, all that you believe will compensate him for the injury, if he is entitled to recover." In another part of the charge the court said: "If you find for the plaintiff he is entitled to recover such an amount as will compensate him for his pain and suffering, for any amount of money that he has expended by reason of the injury, for any loss of wages that he has been deprived of or has been unable to earn by reason of the accident, and, if you believe it is a permanent injury, for loss of earning power for the balance of the time that the injury will prevent his working." *Held* that there was no error in the first portion of the charge as qualified and explained by the latter portion.

Argued Jan. 5, 1893. Appeal, No. 443, Jan. T., 1892, by defendant, from C. P. No. 1, Phila. Co., Sept. T., 1890, No. 126, on verdict for plaintiff, William H. Owens. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Trespass for personal injuries.

At the trial, before BRÉGY, J., it appeared that plaintiff, an employee of the city of Philadelphia, was injured by a car of

defendant company running into him while he was engaged in laying a water pipe under defendant's tracks. The manner in which the accident happened is described in the opinion of the Supreme Court.

The court, under objection, permitted plaintiff to testify as follows:

" Q. What notice was given to the company at the time you commenced work, by yourself or by any of the men, relative to guarding the hole that was to be dug? What notice was given to any of the employees of the defendant company relative to taking care of the hole to be dug? A. I heard one of the men notify three different drivers on three different cars about it. Q. To do what? A. To send a man down—that we were going to open the street, and to send a man to take charge of the hole." [7]

" Q. Did you know of the approach of the car? A. No, sir." [8]

" Q. State whether or not you knew of the usage or custom of the defendant company to notify the men working on the track of the approach of their cars. A. Yes, sir." [9]

" Q. State whether or not you relied upon the usage and custom of the employees of the defendant company to notify the men working upon the track of the approach of their cars. At the time of the accident you were standing in the position you were lowering the pipe into the ditch at the time of the accident. Yes, sir." [10]

" Q. State whether or not you knew in any way of the approach of the car which caused this accident. A. No, sir." [11]

" Q. State whether or not there was any warning given. I mean a warning by the employees of the defendant company as to the approach of this car which caused the accident at any time before it struck you. A. No, sir." [12]

The court, under objection, permitted plaintiff to ask his witness, Joseph S. Weaver, the following questions:

" State whether or not any notice was given to the defendant company relative to the protection of the ditch which had been dug on the day of the accident. A. Yes, sir." [13]

" Q. State what notice was given, and who gave it, and to whom? A. Well, the first three cars that came along, we notified them that we were going to open a hole in the street. I

notified the drivers and conductors to send a man down, that we were going to open the street." [14]

" Prior to the car starting again, state what, if anything, was said. I do not refer to the particular time of the accident, but during the whole day upon which this accident happened. I want you to state what was said, if anything, to the men in the ditch before the car was started over. A. Well, they would holler out, 'Low bridge!' or 'Heads down!' or something like that. That is the way they always do when you are working in a hole." [15]

" Q. State, in lowering a pipe twelve or thirteen feet long, and weighing about three hundred and seventy-five pounds, with a man holding the bell end of the pipe, how it is necessary to lower that pipe into the ditch? A. In order to save the gas pipe we had to lower one end at a time. One man had hold of the bell end of the pipe. The bead end is lowered down, and then the pipe is shifted along the gas pipe." [16]

" Q. State whether or not the plaintiff holding the bell end in the position he was, whether that was a proper or an improper construction? A. That was proper." [17]

" Q. State in what position it was necessary for the plaintiff to stand when holding the bell end of the pipe whilst the pipe was being lowered into the ditch? A. He would have to stand a-straddle of the south track and hold that end until we lowered the bead end in. He held it, and after we lowered the other end it would go to its extent to reach the ground." [18]

" Q. State whether or not the pipe which was to be lowered into the ditch was or was not in a proper position for lowering? A. Yes, sir." [19]

The court charged in part as follows :

" If you find for the plaintiff he is entitled to recover such an amount as will compensate him for his pain and suffering, for any amount of money that he has expended by reason of the injury, for any loss of wages that he has been deprived of or been unable to earn up to the present time by reason of the accident, and, if you believe it is a permanent injury, for loss of earning power for the balance of the time that the injury will prevent his working. But while you are to assess and give him what he has expended by reason of his illness, if a man has it in his power to show you how much he has expended,

for instance, as in this case for doctor's services, and fails to do it, you have no right to guess the amount. If any plaintiff chooses to go to you without showing what his doctor's bill is, you have no right to guess it, he having power to show you what his expenses were.

"If you believe the defendant's contention that this man was not struck by the car at all, or slipped and fell into the ditch, he is not entitled to recover, and your verdict should be for the defendant. The defendant called witnesses to prove that when the car started there was nobody on the track; that this man, as the car was started and approaching the ditch, attempted to put the pipe in, and his foot slipped, he fell against the side of the car, and was pushed into the ditch. If you believe that is so, he is not entitled to recover, and your verdict should be for the defendant.

"Further, if he saw that car approach, and deliberately took the risk, knowing it was coming, and was struck by the car, he is not entitled to recover, for he was guilty of contributory negligence.

"[Act fairly to both sides; do what you believe from the evidence is right and just under the law, as I have given it to you. Give this man, if he is entitled to compensation, all that you believe will compensate him for the injury, if he is entitled to recover; but if the fault was not theirs, if the fault was his, or if it was an accident for which both sides were to blame, or it was an accident for which he alone was to blame, or neither side was to blame, then the verdict should be for them.] [6]

"With a sole and earnest desire to do what is right to do in this case, retire for consideration and deliberation on the subject. Because this man is a poor man, he is entitled to no more consideration than anybody else. A man is entitled to the same consideration whether high, low, rich, or poor. Be just to him, be just to the railroad company. Because the defendant is a railroad company is no reason why, because of that, your verdict should be in favor of the plaintiff. Remember that by your verdict you are to do justice in this case, and render justice without fear, favor, or partiality."

Defendant's points were as follows:

"1. There is no evidence in this case of negligence on the part of the defendant." Refused. [1]

" 2. There is evidence in this case of contributory negligence on the part of the plaintiff." Refused. [2]

3. Request for binding instructions. Refused. [3]

Plaintiff's points were as follows:

" 1. That if the jury believe from the evidence that the plaintiff was necessarily working on the railway track of the defendant company, and was engaged in lowering a water-pipe into the ditch, and was unaware of the approach of defendant's car, and that the employees of the defendant company, without giving any warning or notice to the plaintiff, started the said car and ran same against the plaintiff while he was thus at work, whereby he was thrown into the ditch and injured, the jury may find that the defendant company was negligent, and if they do so find then their verdict must be for the plaintiff." Affirmed. [4]

" 2. That if the jury believe, from the evidence, that the work upon which the plaintiff was engaged required the water-pipe to be in the position that it was, and the plaintiff to stand upon the railway track of the defendant company at the point that he did and concentrate his attention upon his work, and that the car of the defendant company, after having come to a stop, was started by the employees of the defendant, and was run along the track, without any signal of its approach, until it struck and threw the plaintiff into the ditch, whereby he was injured, and that the plaintiff knew and relied upon the usage of the employees of the defendant company to call out and give warning when any of the cars approached the men working upon the railway track, the jury may find that the defendant company was negligent, and, if they do so find, then their verdict must be for the plaintiff." Affirmed. [5]

Verdict for plaintiff for $12,000. On filing remittitur by plaintiff judgment was entered for $7,000. Defendant appealed.

*Errors assigned* were, (1–6) instructions ; (7–19) rulings on evidence, quoting instructions and evidence, but not bills of exceptions.

*Mayer Sulzberger, George P. Rich* with him, for appellant, cited : Thomas v. Ry., 132 Pa. 504 ; Ehrisman v. Ry., 150 Pa. 180 ; Wheelahan v. Traction Co., 150 Pa. 187 ; Buzby v. Trac-

tion Co., 126 Pa. 559; Patton v. Traction Co., 132 Pa. 76; Carson v. Ry., 147 Pa. 219]; Warner v. Ry., 141 Pa. 615; P. & R. R. R. v. Adams, 89 Pa. 31; Fox v. Borkey, 126 Pa. 164.

*Richard C. McMurtrie, Samual Evans Maires* with him, for appellee, cited: P. & R. R. R. v. Adams, 89 Pa. 31; Lake Shore & Michigan Southern R. R. Co. v. Frantz, 127 Pa. 297; Reeves v. R. R., 30 Pa. 454; Heaven v. Pender, 11 Q. B. Div. 503; Dublin v. Slattery, 3 Ap., 1187; Marfell v. South Wales Ry., 29 L. J., C. P. 315; Crowhurst v. Amersham Burial Board, 4 Ex. Div. 11; Firth v. Bowling Iron Co., 3 C. P. Div. 254; Wilson v. Newberry, L. R. 7 Q. B. 31; Illinois Central R. R. v. Shultz, 64 Ill. 172; Goodfellow v. Ry., 106 Mass. 461; Quirk v. Holt, 99 Mass. 164; Christman v. R. R., 141 Pa. 604.

OPINION BY Mr. JUSTICE McCOLLUM, May 22, 1893:

The specifications from one to six inclusive complain of the submission of the case to the jury and of the charge of the court. In support of the claim that the case was not for the jury, it is urged that the evidence failed to show any negligence on the part of the appellant, and that it showed negligence on the part of the appellee which caused or contributed to the injury he received. It was conceded by the learned court below that if the appellant's explanation of the occurrence was accepted by the jury as verity, there could be no recovery against the railway company. But unfortunately for the appellant its explanation was discredited by testimony on the part of the appellee which showed the absence of negligence on his part and the presence of negligence on its part. This conflict in testimony material to the issue made it necessary to refer the case to the jury to ascertain whether the cause of the accident was the mutual fault of the parties, and, if not, whether it was attributable to the default of the appellee or of the appellant. The reference of these questions to the jury resulted in a finding that it came from the unassisted negligence of the latter.

Wm. H. Owens, the appellee, was, at the time and place of the accident, in the service of the water department of the city of Philadelphia, and lawfully engaged in the prosecution of a work which it was the duty of the municipality to perform. It

was a work which to some extent interfered with and obstructed the movement of the cars of the railway company, appellant, but the right of the city to occupy the street in the manner it did for the purpose of carrying it on, is not disputed. The appellee at the time he received the injury complained of was where his duty to his employer and the proper performance of the task to which he was assigned required him to be, and it is settled by the verdict that he was not negligent in being there. It was within the knowledge of the appellant company that the city's employees were at work in and about the ditch at the point where the railway tracks crossed it. It was requested by these employees to send a man to superintend or assist in moving the cars at this point, and it complied with their request. Its method of effecting a crossing was to bring and stop its car as near to the ditch as was practicable, and having detached the horses from it and led them upon the street beyond the north rail of the track to again attach them to the car by means of a rope about fifteen feet in length and slowly draw it to the other side. In accomplishing this movement the horses were led by one of its employees walking backwards along the street outside of the north rail, its driver followed the horses holding the swingle-trees in one hand, and the reins in the other, and its conductor occupied the front platform of the car with his hands upon the brake. It appears in the testimony without contradiction that when its employees were in readiness to move a car across the ditch in the manner stated, they were accustomed to notify the employees of the city at work there, and that the only time they omitted to do so was when they started the car by which the appellee was struck and injured. The excuse they make for this omission is that they looked ahead before starting the car, and discovered the way was clear. It is not possible to read the testimony on this point without receiving the impression from it that the city's employees expected to have notice of the starting of the car in time to get out of its way, and that the employees of the railway company, with the single exception mentioned, gave it. It is manifest from the testimony of the company's employees that they considered it was their duty to exercise care in the movement of the cars at this point for the protection of the men at work in and about the ditch, but it does not inform us whether this sense of duty was quickened

by instructions from the company, or was the result of their own just appreciation of the situation.   It seems to us, however, that the notice they were accustomed to give was a reasonable and prudent act under the circumstances shown.   The value of such notice sufficiently appears in the fact that when it was given there was safety for the workmen, and the first omission to give it was followed by the injury which is the subject of this litigation.

The cases which are descriptive of the rights and duties of persons in crossing steam or street railways are not applicable to the situation presented by the evidence in this case.   The city's consent to the occupancy of a portion of the street by the railway company was not destructive of its right to repair or construct works necessary for the health of its inhabitants or the protection of their persons and property.   In the exercise of this right it was bound to carefully avoid any unnecessary obstruction of the company's road or interference with its operations, but it is not pretended there was such obstruction or interference in this case.   It was engaged, with due regard to the interests of all concerned, in a necessary public work.   It was exercising its lawful right in obedience to its obvious duty.   The appellee was in its service and lawfully in the place where he was struck by the appellant's car and permanently disabled.   Was the injury he received caused by the negligence of the railway company?   This was not, upon the conflicting evidence in the case, a question of law for the court, but it was a question of fact for the jury to whom it was referred.   Was it submitted under correct instructions?   The appellee contends that it was not and criticises the portions of the charge which relate to contributory negligence and the measure of damages.   An examination of the charge, however, shows that this criticism is without just foundation.   It is true that the appellee's first and second points contained no reference in terms to the effect of contributory negligence on his right to recover, but as the facts recited in the points conclusively negatived the existence of such negligence there was no error in the affirmance of them.   When the affirmance of the points is considered in connection with the subsequent general instruction on the subject of contributory negligence, it is clear that the appellant was allowed the full benefit of any default of the appellee

which was wholly or partially responsible for his injury. But in the testimony submitted by the appellee in support of his claim no such default appeared, and the jury were plainly told that, if they believed the evidence of the company's employees, he was guilty of contributory negligence and could not recover.

In the instruction as to damages, there was no intimation that they " were to be assessed without the application of any rule of law whatever," as is claimed by the appellant. On this point the learned judge said to the jury : " If you find for the plaintiff he is entitled to recover such an amount as will compensate him for his pain and suffering, for any amount of money that he has expended by reason of the injury, for any loss of wages that he has been deprived of or been unable to earn up to the present time by reason of the accident, and, if you believe it is a permanent injury, for loss of earning power for the balance of the time that the injury will prevent his working." The compensation referred to in the language which constitutes the sixth specification was plainly such as was defined in that portion of the charge we have quoted. There was, therefore, no reasonable ground for misapprehending the instructions on this point, and as the appellant has not alleged that there is error in the instruction we have quoted, the subject requires no further consideration.

The remaining specifications may be considered together. They complain of the admission of evidence showing that the appellee was in the service of the city and in the proper performance of the work assigned to him, at the time he received his injury. We think the evidence in its general scope and purpose was relevant on the question of his alleged contributory negligence, and that there is nothing contained in the specifications which requires a reversal of the judgment. All the specifications of error are overruled.

Judgment affirmed.