# Thomas J. O'Malley v. The Scranton Traction Company, Appellant.

*Negligence — Street railways — Contributory negligence — Question for jury.*

In an action against a street railway company to recover damages for personal injuries caused by the negligent running of a car into a gang of workmen, of which plaintiff was one, the question of plaintiff's contributory negligence is for the jury where the evidence for the plaintiff tended to show that he was engaged in laying cement between the rails of a street railway ; that immediately before the accident he had procured a shovelful of cement, and before stepping upon the track had stopped, looked and listened, and seeing no car near went upon the track, and while stooping over his work and depending upon the car bell to warn him, was struck by the car which was run at a high rate of speed without any bell sounding.

Argued Feb. 21, 1899. Appeal, No. 205, Jan. T., 1898, by defendant, from judgment of C. P. Lackawanna Co., Nov. T., 1894, No. 207, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before GUNSTER, J.

At the trial it appeared that plaintiff was injured on June 27, 1894, by being struck by a trolley car while he was engaged at work in repairing the pavement at a point on Washington avenue in the city of Scranton. Plaintiff was one of a gang of workmen employed by the Barber Asphalt Company. The circumstances of the accident are stated in the charge which was in part as follows :

The plaintiff alleges that he was at work repairing the pavement on Washington avenue, as I have already said to you ; that he was working on the part of the highway covered by the track of the defendant company ; that he had gone to the side of the avenue for the purpose of getting a shovelful of cement ; that he was engaged in spreading the cement upon part of the road that had already been covered with the asphalt while the asphalt was warm ; that he was covering that part of it, a narrow strip of it some fourteen inches wide and some fifteen feet long ; that he was covering that part of it with cement or cement dust ; that after he had got the shovelful of cement he came back to the track, and that before stepping upon the track he stopped and looked and listened to see, presumably, whether he could safely go upon the track ; that a car had only shortly before passed going north, and stood upon the switch some distance the other side of Larch street ; that he stepped upon the track, turning his face to the south, and began sprinkling this cement upon the warm asphalt ; that he was stooped over, and had been so occupied only a short time, had covered perhaps some seven or eight feet, about half of this narrow strip, which he was covering with cement, when suddenly he was struck by the car of the defendant company ; that he was knocked down, thrown under the car and dragged for some distance. He further alleges that he was using all the care which a reasonably prudent person, under the circumstances of the case, situated as he was, engaged in the occupation in which he was, and doing

what he was, would have used under like circumstances, and that, therefore, he was free from negligence himself.  He further alleges that the motorman who was running the car was negligent, in that he was running the car at an unreasonable or an unusual rate of speed ; that instead of looking forward ahead of the car to see whether anybody was upon the track, the motorman was looking sidewise westerly down Larch street, and that the motorman was further negligent in not giving any alarm or warning by the ringing of the bell.   That is substantially the allegation on the part of the plaintiff.

Upon the part of the defense the defendant alleges that the motorman slowed the car after he ran on to the switch above Larch street, or north of Larch street; that he slowed the car coming down toward Larch street; that he was ringing the bell ; that he was on the lookout for passengers to get on or off at Larch street, and that he was ringing the bell as he was crossing Larch street; that the plaintiff was only a short distance south of Larch street; that he saw the men who were engaged at work on the road get off; that O'Malley, the plaintiff, himself got off the track, and that then the plaintiff, without looking, suddenly stepped back on the track again and was struck by the car and knocked down and injured in that way.

It is alleged that the plaintiff, Mr. O'Malley, was not, himself, taking proper care, taking ordinary care under the circumstances of the situation; that he neither looked nor listened, and that if he had looked or listened he would have seen the car approaching, and could have got out of the way; and that the defendant used care, both in slowing the car in the manner in which the car was run, the rate of speed at which it was being run, and in the warning which was given; and that the plaintiff, through his own negligence, was injured.   Now, these are the allegations upon the part of the defendant.   It depends upon which of these allegations you believe.   If you find that the plaintiff was negligent himself, and that that negligence contributed to his injury, he cannot recover.   If you find that the defendant's motorman was not negligent then the plaintiff cannot recover, because if the motorman was not negligent then there was no negligence for which the plaintiff can recover.   The basis of this action is the negligence of the defendant.   If the defendant was not negligent then the plaintiff cannot recover.

But if you find that the plaintiff was using the care required by the circumstances of the situation, and that the motorman was not using that care, then the plaintiff may recover.

Upon the part of the plaintiff a number of witnesses have been called. I shall refer to the testimony briefly, and I do not wish you to understand me as referring to all of it, because the testimony is for you; I shall simply refer to portions of it for the purpose of calling your attention to the bearing which they have upon the question of whether or not the plaintiff was negligent, and whether the defendant's motorman was negligent. Upon the part of the plaintiff, you have the testimony of the plaintiff himself. He testifies that he was working for the Barber Asphalt Company; that he was some twenty-five feet below Larch street; that before entering upon the track, after he had gone to get a shovelful of cement, he stopped and looked and listened; that the car which had just previously passed going north was stopping at the switch; that he paid no further attention to the matter, but went on about his work depending upon the bell. In another part of his testimony he testifies that he was listening while he was at work, waiting for the signal from the bell before he would stop his work. He further testifies that the bell was rung with all the other cars, and impliedly with this car, because this car had passed, as I understand the testimony, before that day, that all the cars had passed them, while they were at work, rung the bell for some distance back before they got to where the men were at work some twenty, thirty, forty or fifty feet, but as a rule that they invariably rang the bell to where the men were at work as a signal to them to get out of the way of the car; that, while he was stooping over this narrow strip of asphalt which had just been put down, and which was still warm, and which was about fourteen inches wide and fifteen feet long, he was struck by the car, thrown under it and hurt, and especially in the back. He testifies that at the time, while he was at his work, the other men in the gang were sitting by, some ten or twelve—the exact number is not given—but some of them were there sitting on the curb, except one man who testifies that he was doing some painting by the side of the track, waiting there or walking along about there, waiting for some asphalt to arrive, some more materials, but that he was at his own work, and at the time

when he was struck and prior thereto, no bell had been rung and no alarm given him.

He is corroborated in his testimony more or less by the testimony of other witnesses. Patrick Harrity testifies that he was working there patching the avenue from curb to curb; that he was standing on the curb at the time and was doing nothing; that he saw O'Malley on the middle of the track; that he saw the car within fifteen or twenty feet above Larch street, that is, on the other side of Larch street, coming down towards where the men had been at work there, and where O'Malley was at work; that the motorman, at the time he was looking at the car, was looking west; that is, instead of looking ahead of the car, he was looking west down Larch street at something on the pond, implying that there was a pond down in that direction somewhere; that he was looking down Larch street as if something on the pond had attracted his attention; that he was looking in that direction when O'Malley was struck; that he had heard no bell rung; that O'Malley was facing south, sprinkling the cement, and that the car was running about three times as fast as the cars that passed at that place usually ran; that when O'Malley was struck he ran after the car, calling to the motorman, or to the person who had charge of the car, to stop the car; that he stopped, and that the motorman asked him what was the matter, and that Harrity told the motorman that he had killed one of the men; that is, one of the men who were engaged in the work there, and that the man was under the car, and that then the motorman got off the car to look—evidence tending to show, if it be true, that the motorman did not know that he had struck a man, did not know what was the matter—evidence tending to show that the motorman was not looking ahead, was not looking out, because if he did not know that he had struck a man, he did not know what was the matter. If this evidence be true, it tends to show that. He says that O'Malley was under the car, and the witnesses have described to you the position in which they found him under the car, doubled up, with the car on his back; that they raised the car by moving it in some way or another to extricate the plaintiff from under it. He further testifies that he measured the distance from where O'Malley had been at work to the place where the car stopped, where O'Malley was extricated. He tes-

tifies that not only himself, but also that Nesbitt, who was foreman of the gang, and, I think, one of the other men, measured the distance, and he testifies that it was from 125 to 130 feet. This distance would be evidence bearing upon the rate of speed at which the car was being run. You will remember that the motorman testifies that he stopped the car within half of its own length; that the car was about twenty-six feet long, evidence tending to show that he stopped the car within thirteen feet distance, evidence tending to show that the car was not moving at any great rate of speed, but that it was easily within his control if he could stop the car within one half of its distance.

You have also the testimony of William Talleferro, a colored man, who was occupied with this gang of workmen as a raker. You probably know by observation yourselves the nature of this employment, by having seen men working at paving the streets. He testifies that he was a raker; that he was working there and that he was painting patches by the side of the track; that O'Malley was there with a shovel, sprinkling the cement outside upon the part that had been asphalted; that he did not see O'Malley when he was struck, but that he heard the hallooing and saw O'Malley going down with his shovel; that he ran out and hallooed to those who had charge of the car to stop the car, and that the motorman asked him what for, the question indicating that the motorman did not know why he was called upon to stop; evidence tending to show that he did not know that he had struck a man in front of the car; that the motorman then stepped off the car and they extricated O'Malley. He also testifies that the bell usually rung there, but that he had heard no bell, that he was near O'Malley at the time, but that he did not hear the car coming. Mr. Lysle also testifies that he was a tamper there, and that he was sitting down on the curb. (You will remember there is testimony in the case that these men, most of them all except O'Malley and Talleferro, were not working at the time, were idle.) Lysle testifies that he was sitting down, that he heard the hallooing that the man was under the car, but that the bell was usually rung when the car passed when at their work, but he heard no bell ring at this time. Mr. McGinniss testifies that he was at work as a tamper, and that he was on the curbstone

at the time this accident happened; that he heard the hallooing; that he saw O'Malley under the car, and that he ran after the car; that the car was running so fast that he was unable to keep up with it for a while; that the motorman when he got up to the car asked what was the matter, and that he was told there was a man under the car. He also testifies that he assisted in measuring this distance; that he and Harrity did it with a tape line, and that the distance from this place where the plaintiff was struck to the place where the car stopped was forty or fifty yards, testimony corroborating Harrity as to the distance which the plaintiff was dragged after he was knocked down by the car. He says that he did not see the motorman before the car struck O'Malley, but he also testifies that the car was running about three times as fast as the other cars did when they passed them at their work. Another workman that was engaged there was Laftgracht, who says that he was sitting down at the time the accident occurred; that his attention was called to it by the hallooing; that he saw O'Malley under the car, but did not see him when the car struck him. He also testifies that he heard no bell, but that the bell usually rang when the cars passed. . . .

Upon the part of the defense, three witnesses have been called as to whether or not the motorman was negligent, and whether or not the plaintiff was negligent. They have called the motorman himself, Charles Lisk, who says that he passed the car on the switch; that he was coming south (the car on the switch you will remember was going north); that he saw a man on the track working as he left the switch, or saw him either from the switch or after he had left the switch, but that he saw the man upon the track working as he was coming down towards Larch street; that as he passed Larch street he sounded the gong, and slowed up to see if there were any passengers to get on, and that as he went on the man whom he had seen on the track stepped to the left two or three steps keeping his back to the car, and when within six or eight feet of the car, he turned and stepped right on to the rail in front of the moving car, ahead of the car; that at the time the accident occurred and before it he was looking ahead, looking at the man who had been on the track and gone off; that he was ringing the bell, and that the moment the man stepped back to go on to the track

he reversed the power, which you will remember had been turned off; that he reversed the car and put on the brakes of the car, and that the car moved only one half or one third of its length before he stopped it; that the car was about twenty-six feet long —evidence tending to show, if it be true, that he stopped the car within a distance of thirteen feet from the time it struck the man. He also testifies that there was some one on the front platform with him at the time, but he does not identify who it was, except, I think, that he saw the person was here in court. He further testifies that he heard no one call. (You will remember a number of witnesses on the part of the plaintiff testified that they called and that they heard calls to him to stop the car.) He testifies that he heard no one call, but he does testify that when some of these parties came to him they accused him of running the car at the rate of twenty miles an hour, and as if expressing some doubt as to their accusation, their good faith in making such a charge against him, he inquired what was the matter with them—evidence tending to show that, instead of inquiring what was the matter, that is, evidence tending to show that he did not know that he had struck a man and that the man was under the car, he knew that he had struck the man, but wanted to know what was the matter with these people because they charged him with running the car at the rate of twenty miles an hour when he was able to stop it within half its length. He says that when he was at Larch street he was running at the rate of about five or six miles an hour; that the grade there was a little down; that he slowed up because the men were at work there, and that he was on the lookout for the men who were working there.

He is corroborated by the testimony of two other witnesses. George Sanders is called and testified that he lives on the West side; that he was employed at that time at the Stove works; that he got on the car at New York street, got on the rear end of the car and walked through the car and went on to the front platform. He testifies that the motorman rang the bell for the men working there; that he, Sanders, thought that the track was clear; that the bell rung before they got to Larch street; that he saw the men when they were at Larch street working ahead, but that he saw no one on the track, and that when they got near the men one of the men stepped on the track and was

struck at once, and that he was struck so quick that he did not see where he came from; that it was so quick that he could not measure minutely the distance which he stepped on the track ahead of the car. He says that the motorman rung the bell passing Larch street, but that he didn't hear the bell rung further down; that the man was knocked down and dragged; that the motorman reversed the car and put on the brake as soon as the car struck O'Malley, and that the car didn't go far after it struck, perhaps not more than twenty feet.

Michael Reap testifies that he got on this car at New York street also; that he was sitting on the front seat with his elbow on the window, looking out the front window; that he saw the man on the street; that there was a lot of men there; that one of them was on the center of the street with a shovel in his hand; that he stepped off the track and stepped back again; that the car was very close; that the bell was rung at Larch street, but he could not say whether it was rung after that; that he did not hear it ring after that; that the car was not going very fast, and that when O'Malley stepped in front of the car the motorman reversed the car.

Verdict and judgment for plaintiff for $4,558.75. Defendant appealed.

*Errors assigned* among others were in refusing defendant's seventh and eighth points, quoted in the opinion of the Supreme Court.

*Everett Warren,* with him *Edward N. Willard* and *Henry A. Knapp,* for appellant.—The plaintiff was guilty of contributory negligence under the undisputed evidence: Lynch v. Boston & Albany R. R. Co., 159 Mass. 536; Aerkfetz v. Humphreys, 145 U. S. 418; Schaible v. Ry. Co., 97 Mich. 318; Keefe v. Ry. Co., 92 Iowa, 184; Davis v. N. Y., N. H. & H. R. R. Co., 159 Mass. 532; Owens v. The Peoples Pass. Ry. Co., 155 Pa. 334; Gilmartin v. Lackawanna Valley Rapid Transit Co., 186 Pa. 193.

*Joseph O'Brien,* with him *M. F. Sando* and *John P. Kelly,* for appellee.—The case was for the jury: Owens v. Peoples Pass. Ry. Co., 155 Pa. 334; Quirk v. Holt, 99 Mass. 164; Goodfellow v. Boston, Hartford, etc., R. R. Co., 106 Mass. 461;

Illinois Cent. R. R. Co. v. Shultz, 64 Ill. 172; Little v. Street Ry. Co. of Grand Rapids, 78 Mich. 205; Davis v. N. Y., N. H. & H. R. R. Co., 159 Mass. 532.

OPINION BY MR. CHIEF JUSTICE STERRETT, May 15, 1899:

This action was brought to recover damages for personal injuries caused by the negligence of defendant company in carelessly and recklessly running one of its cars into a gang of workmen (of which the plaintiff was one) then engaged in repairing or paving Washington avenue on which defendant's railway was laid. The evidence tended so strongly to establish the fact of negligence, on which the action was based, that, in order to escape the consequences thereof, the defendant contended that plaintiff was guilty of negligence which contributed to his injuries, etc.; and accordingly in its seventh and eighth points for charge, it requested the court to give these binding instructions to the jury:

" 7. That, under all the evidence in this case, the plaintiff is not entitled to recover.

" 8. That the plaintiff was guilty of contributory negligence in this case and is therefore not entitled to recover."

The learned trial judge, rightly refusing to affirm either of these propositions as matter of law, fairly and impartially submitted the question of plaintiff's contributory negligence to the jury as a question of fact to be determined by them from all the evidence. In view of the testimony that was then before the jury, it is impossible to see how he could have done otherwise without usurping the functions of the jury, and undertaking to determine questions of fact which were exclusively within their province, and wholly outside the scope of a presiding judge's duties under any rational system of trial by jury.

Without unnecessarily consuming time in commenting on the testimony for the purpose of showing that it contains no undisputed evidence, and no admitted fact or facts that would have justified the court below in holding as matter of law that the plaintiff was guilty of contributory negligence, it is sufficient to say that after a careful consideration of the record we reached the conclusion that there is nothing therein on which such binding instructions could have been legally based. Without disregarding his own duty, and usurping that of the jury, the

learned trial judge could not have done otherwise than refuse to affirm defendant's seventh and eighth requests for instructions.

We find no substantial error in either of the six remaining specifications; nor is there anything in the questions presented by them that requires discussion.

Judgment affirmed.