## Richards v. Reading Company

*Thomas J. Clary,* for plaintiff.
*Henry R. Heebner,* for defendant.

MACNEILLE, J., June 7, 1938.—The jury rendered a verdict in the sum of $25,000 in favor of Bessie Richards suing on behalf of herself and three minor children against defendant for damages for the death of her husband, and on behalf of defendant there have been filed motions for judgment non obstante veredicto and for a new trial, which are now before the court for disposition.

On behalf of plaintiff there was produced testimony that her husband, Milton M. Richards, was struck and killed by a train of defendant company on July 14, 1936, in the Borough of Annville, Lebanon County, Pa.; that

the deceased was, at the time, employed as a construction superintendent by C. L. Miller, a contractor, to supervise the construction of a bridge over the right of way of defendant company, for the Highway Department of the Commonwealth of Pennsylvania, on Route 651; that the work on the approaches to the bridge started on June 27, 1936, and on July 8, 1936, the resident engineer of defendant company, who was in charge of construction in that section, notified the inspector on the job that the construction of the bridge could proceed on railroad property, and defendant company had an inspector on the job from July 1, 1936, up until the date of the accident.

There was further testimony produced on behalf of plaintiff that July 14, 1936, was a bright clear day and immediately before the accident Mr. Richards, the deceased, was directing the work at the over-pass. At that time they were drilling rock, ready to blast and Mr. Richards was directing the movement of the man who was doing the drilling. The rock that was being blasted was limestone and, therefore, required technical skill, and, as the drilling was close to the train tracks, considerable care had to be taken so that the blasting would not disturb the tracks, and Mr. Richards had to use his technical skill properly to direct this operation. Great care had to be taken as to the direction in the drilling of the holes, their depth, the angle at which they were put, and the distance apart that they were to be placed, and the amount of dynamite used, and, in order to properly direct this work, Mr. Richards had to be at the scene of the operation, which required him at times to be on the ties and at other times in the gutter two or three feet from the ties. Part of the rock to be drilled had to be cut to a depth of two feet below the top of the existing rails of defendant company at that point, and had to be cut from the existing track of defendant company to the abutment of the bridge. Provision had also to be made in

the construction so that defendant company could later on place four tracks where it now only had two tracks, to allow for the expansion of defendant company.

The double track line of defendant railroad runs east and west at the scene of the accident, through a limestone cut 16 feet deep, and the tracks are perfectly straight for a distance of at least a half a mile on either side of the point where the work was being carried on. On the day in question all of the work on the project was being performed on the north side of the railroad's right-of-way and a man was operating a pneumatic drill at a point about eight feet from the north rail of the westbound tracks.

On the afternoon of July 14, 1936, at about 4:50 p.m., Mr. Richards was standing within a foot and a half or two feet of the ties, engaged in his work of directing the drilling, when he was struck by a freight train of defendant company traveling west at 45 to 50 miles per hour. The approaching train could not be heard on account of the noise of the machinery which was in operation.

There was testimony produced on behalf of plaintiff that no signals or bell was sounded by the train and one witness, on behalf of plaintiff, testified that at the time of the accident the engineer was not at his ordinary station in the window of the cab, when Mr. Richards was struck by the freight train.

There was also produced on behalf of plaintiff testimony that Mr. Richards was 50 years of age, about six feet tall, and for some time prior to the accident had earned $75 per week, and that he kept about $15 to $18 per week for his own personal expenses and gave the balance for the use of his family, and that out of the money turned over to the use of his family Mr. Richards' clothes had to be purchased; and testimony was produced as to the exact amount that was so used.

No testimony was offered on behalf of defendant and the jury rendered a verdict in the sum of $25,000 for plaintiff.

Defendant's motion for judgment non obstante veredicto is based entirely on the contention that Mr. Richards was guilty of contributory negligence in unnecessarily assuming a position of obvious danger, but with this contention we cannot agree.

There is a presumption that decedent used proper vigilance in performing his duties, and we do not believe that this presumption is rebutted by any of the proven facts. On the contrary, from the testimony produced the jury was warranted in concluding that Mr. Richards had to be at the scene of the drilling and blasting operation to direct it, and that some of the work would take him on or very close to the tracks of defendant company, and considerable attention had to be paid by Mr. Richards to the operation and to spotting the proper places to drill holes, and to supervise the drilling work itself so that the work would be done without damaging the tracks of defendant company, and since the work undoubtedly required the absorption of his undivided attention for a period of time, he could not pay exclusive attention to the operation of the trains by defendant company, and under all the circumstances only a jury could decide from the testimony as to whether Mr. Richards' presence was required on the tracks and whether he used due care under the circumstances.

The applicable principles of law are laid down by the Supreme Court in the case of Van Zandt v. Philadelphia, Baltimore & Washington R. R. Co., 248 Pa. 276, where the Supreme Court used the following language:

"It is settled in this jurisdiction at least that the rights and duties of a person lawfully engaged on and near a railroad track are essentially different from those of a person about to cross such track at a public crossing. The two situations are entirely different: A person about to

pass over the tracks of a railroad at a public crossing is required to stop, look and listen for an approaching train. He must continue to look and listen until he has passed entirely beyond the tracks. His duty does not require him to stop on or so near the track that he may be struck by a passing train, and he must recognize that his only right there is one of passage, and any unnecessary delay in or near the tracks resulting in his injury will convict him of negligence which will defeat a recovery against the defendant company. The railroad company has the right to a clear track even at a public crossing, except the necessary time required by the traveler to pass over the crossing when he has, exercising proper care, ascertained that no train is approaching. His only duty at the crossing, therefore, is actively watching and avoiding a collision with a passing train. The duty of the railroad company is to operate its trains at a public crossing with a due regard to the rights of the traveler, and such duty requires the persons operating the train to give proper notice or warning of its approach to the crossing in anticipation that a traveler may be intending to pass the crossing. The same rules of conduct, however, cannot be applied to a railroad company and one employed on or along its tracks. The rights and duties of both the company and the person employed are essentially different. The workman is engaged to perform his service on or along the tracks. His presence there is necessary in the discharge of his duties. Trains may be passing every few minutes or even seconds and his safety requires that he avoid a collision. It is apparent, therefore, that if he is to be constantly looking out for an approaching train he cannot perform the service for which he is employed. Such a duty is entirely inconsistent with the performance of his duty toward his employer. Such attention to passing trains running as frequently as suggested would defeat the very object for which the workman was employed. It is, therefore, unreasonable and hence not ex-

pected, and necessarily the law does not require it. What is required of the workman is that he exercise care for his safety according to the circumstances. He knows he is occupying a place of great danger and his care must be commensurate with that danger. He is equally cognizant of the fact that he must perform faithfully the services required of him. Both obligations are resting upon him, and each must be met with a due regard to the other. Such is his position, and it is apparent that it is entirely different from that of the traveler who is about to pass over the tracks of a railroad at a public crossing. On the other hand, the railroad company owes the duty to the workman to recognize that it has directly or indirectly employed him to perform the service on or near its tracks and the danger necessarily incident to the service, and that, therefore, it must be vigilant in securing his safety. It is fully aware, not that he may be in the place of danger like the traveler at the crossing, but that his duty requires him to be and he is actually present at the place of danger when its train is passing. It also knows that the faithful performance of his duties prevents his constant watchfulness of approaching trains and hence the imperative necessity for a signal or notice sufficiently adequate and timely that by the exercise of due care on his part he may escape a collision. These are the relative rights and duties of a railroad company and those engaged directly or indirectly by it to perform a service on or along its tracks."

Similar conclusions were reached in the case of Reed v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co., 243 Pa. 562; Owens v. Peoples Passenger Ry., 155 Pa. 334; Christman v. Philadelphia & Reading R. R. Co., 141 Pa. 604; O'Malley v. The Scranton Traction Co., 191 Pa. 410; Ominger v. The New York Central & Hudson River R. R. Co., 4 Hun (N. Y.) 159; Wells, Admx., v. The Brooklyn Heights R. R. Co., 67 App. Div. 212; Simon v. P. R. T. Co., 306 Pa. 466; Peters v. Schroeder

et al., 290 Pa. 217; Chew v. P. R. T. Co., 90 Pa. Superior Ct. 155; and Craig v. Riter Conley Mfg. Co., 272 Pa. 219.

The case of Bass v. Pa. R. R. Co., 303 Pa. 382, relied on by defendant, is distinguishable from the present case because in the former case it appeared affirmatively in plaintiff's case that the whistle on the train was blown as it approached plaintiff, and that also a loud air whistle was blown. It also appeared that there was no occasion for decedent to stand on the rail of the track.

Similarly in the case of Bardis v. Philadelphia & Reading Ry., 267 Pa. 352, cited by defendant, it appeared that no part of plaintiff's work required him to be on the tracks where he took up his position, nor was there anything that he was doing that necessitated his close attention.

Also in the case of Sweatman v. Pa. R. R. Co., 264 Pa. 286, also cited by defendant, it appeared that plaintiff was walking toward the train that hit him, when the headlight of the engine was burning and the bell ringing, and that plaintiff was not engaged in any other work except walking, which is an entirely different situation than the one here involved.

The other cases cited by defendant are of very little aid in the case before us on the question of contributory negligence.

Under the authority of the above-cited cases, we are compelled to conclude that the question of Mr. Richards' contributory negligence had to be left to the jury.

Defendant's motion for a new trial is based on the ground that certain testimony was improperly admitted, and on a portion of the court's charge, and also that the amount of the verdict was excessive.

Defendant complains because testimony was admitted on the part of plaintiff that in the course of the operation, prior to July 14, 1936, when stones were blasted, on occasions they would fly on the tracks and they had to be removed by the workmen. However, we do not see why this testimony should not have been admitted and no cases

were cited by defendant to support its contention that it should not have been admitted.

The only case cited by defendant is that of Richardson v. Public Ledger Co., 260 Pa. 602, where testimony as to the condition of an institution 19 days after a publication appeared which was claimed to be libelous was held properly rejected, but that presents an entirely different situation than the one here involved.

Defendant also complains because in the charge to the jury the court left it to the jury to decide whether decedent's duties required him to be on the railroad tracks or close to them.

There was testimony produced on behalf of plaintiff that the rock to be drilled was to be cut from the present track to the abutment of the bridge to a depth of two feet below the top of the present rail, and that provision was to be made for two additional tracks for defendant company, and there was other evidence from which the jury could legitimately conclude that the duties of plaintiff required him to be either on the railroad tracks or so close to them as to be struck by a train.

We have carefully reviewed the portion of the charge complained of and find that it was more favorable to defendant than was justified.

In charging the jury on the question of contributory negligence nothing was said of the presumption that decedent used due care under the circumstances.

We think there is merit to defendant's contention that the verdict was excessive. Decedent was a robust man, 50 years of age, who earned $75 per week and kept only $15 to $18 per week for himself, and turned the balance over for the upkeep of the family. From this money approximately forty dollars a year was spent for a suit for decedent and $6 to $8 per month for his other clothes. There was a $444 funeral bill. Defendant was doing the kind of work in which his earning capacity was not very likely to decrease as his work was of a very highly tech-

nical and skilled nature. We are of the opinion that $21,000 represents a satisfactory amount.

For the reasons indicated, motion for judgment n. o. v. is overruled. As to the motion for a new trial, plaintiff is directed to file a remittitur for all of the verdict in excess of $21,000, and upon filing of the same within 10 days hereafter the motion for a new trial is overruled—otherwise the motion is granted.