## Anschel, Appellant, *v.* Pennsylvania Railroad Company.

Argued November 24, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Lionel Teller Schlesinger,* for appellant.

*Philip Price,* of *Barnes, Dechert, Price & Smith,* with him *Scott Seddon,* for appellee.

OPINION BY MR. JUSTICE MAXEY,* January 4, 1943:

This is an appeal from the action of the Court below in dismissing plaintiff's exception to the adjudication of the trial judge, who in an action of trespass for the death of plaintiff's husband, in which a jury trial was waived, held that the plaintiff was not entitled to recover. Plaintiff's husband, Hugo Anschel, aged 58 years, fell into an elevator shaft in the defendant's Broad Street station, Philadelphia, at noon on Sunday, July 28, 1940. While he was in the station waiting for a train he left his wife and adult son to go to the men's room. Two days later his dead body was found at the bottom of the shaft of a passenger elevator in that station. In the passageway from the train platform (where the deceased was last seen by his son) to the men's room there were two doors entering upon elevator shafts. One of these doors opened upon the shaft at the bottom of which the deceased was found, 30 feet below the "train level floor". This floor was described as the "last stop for the elevator" when descending.

The negligence alleged was in the defendants leaving "the door or safety gate of the elevator shaft unenclosed, unguarded and unprotected" and for violating the Act of April 25, 1903, P. L. 304, which requires that elevator doors be kept closed when not in use. This act was repealed by the Act of May 1, 1929, P. L. 1063, section 4900.

The elevator door was "a double leaf sliding door, which was opened and closed by a handle on the inside, and when opened one leaf slid behind the other and then both leaves disappeared behind the jamb of the door. It was held closed by two devices, one the inter-locking safety catch on the wall of the shaft and the other the catch on the door".

The operator of this elevator who was on duty on the day in question testified that he found the door open on one of his trips down from the upper floors, though the

---

* Mr. Justice MAXEY became Chief Justice on January 4, 1943, after this opinion was filed.

door was "all the way shut" before he left the floor on the ascending trip. He said the mechanism of the elevator door was such that the elevator could not leave the floor unless the door was closed and that there is another "mesh door" that also has to be shut before the elevator can be moved. When he found the door open, there was nothing wrong with its mechanism. According to this witness, the door "can be opened" from the outside of the elevator "but you would have to kick and bang on it. It would take an awful hard blow to make it leave its place". Soon after the body was found in the pit, the defendants plant supervisor, John J. Boyle, inspected the door and found nothing wrong with its mechanism. He said the engineer had worked on the car between the Sunday when this fatality occured and Tuesday, and found nothing out of order. Boyle characterized this accident as a "mystery" and on the record this characterization must be accepted. That it *is* a mystery is the fatal weakness in plaintiff's case.

The burden of proof was, of course, upon the plaintiff, and as we said in *Whigham v. Metropolitan Life Insurance Company*, 343 Pa. 149, 156, 22 A. 2d 704: "The burden of proof resting upon plaintiffs in civil actions cannot be met by conjectures. The phrase 'burden of proof' means exactly what it says". The basic proposition essential to plaintiff's recovery in the instant case was not established by proof. The fact of the accident did not alone prove negligence on the part of the defendant. Nothing was shown to be defective in the elevators. No neglect of duty on the part of the elevator operator or on other of defendant's employees was shown. The defendant company was not an insurer of the safety of this decedent while he was in the station. "The full measure of the defendant's duty was to use reasonable care by inspection and policing to keep its station in a safe condition": *Green v. Baltimore & Ohio Railroad Company*, 214 Pa. 240, 243, 63 A. 603. Restatement of Torts, Vol. 2, section 347. Plaintiff's argument is this: "Since the

door could not be opened from the outside, it must have been left open by the elevator operator, as he left the floor on the up trip. This was the negligence of the defendant." It was *not* established *as a fact* that the door "could not be opened from the outside". The evidence was as already noted. The possibility that Anschel himself opened this door is not excluded by the testimony. He was blind in one eye and he may have thought that the elevator door was the door to the washroom and that it was barred and he then may have done exactly the thing necessary to be done to open it. The "hard blow" described as necessary to "make the door leave its place" might have been administered by him. That hypothesis cannot be judicially excluded so that liability can be imposed on the defendant.

If the door had been left unfastened or open, it was Anschel's duty to take care lest he walk into the shaft. The hour was mid-day and Anschel's son answered "yes" to the question: "It was quite bright from daylight on the train platform". In *Douville v. Northeastern Warehouse Company*, 337 Pa. 188, 10 A. 2d 394, we said: "If an elevator shaft is properly lighted, a person who approaches it is charged with the duty of seeing whether or not the elevator door is open when the elevator is not at that floor." In *Bailey v. Alexander Realty Co.*, 342 Pa. 362, 20 A. 2d 754, (which was also an "elevator shaft" case) we said: "The duty of availing oneself of one's senses, for self-protection can seldom be breached with physical impunity and never with legal sanction". In this case as in that one, "the rule that a victim cannot recover damages for injuries sustained by him if he could have avoided the injury by the exercise of ordinary care bars this plaintiff's recovery".

The fact that the deceased's eye-sight was impaired did not increase defendant's duty toward him in this case, nor excuse him from his own negligence. See *Bilotta v. Media, Middleton, A. & C. Ry. Co.*, 220 Pa. 542, 70 A. 123; and *Malloy et al. v. Castle Shannon Bor-*

*ough et al.,* 344 Pa. 469, 25 A. 2d 722; *Smith v. Sneller et al.,* 345 Pa. 68, and *Flynn v. Pittsburgh Railways Company,* 234 Pa. 335, 83 A. 207. "If the actor knows that he is physically inferior in any particular, he is required to use his remaining faculties with greater diligence:" Restatement, Torts, Vol. 2, section 289, comment 'h', page 768. The presumption that the deceased used due care, does not relieve the plaintiff of any of the burden of proof, nor does it prevent a finding from the facts, if they warrant it, as they do here, that the deceased was guilty of contributory negligence.

The judgment is affirmed.