## McHale v. Bensalem Country Club Inc.

*Joseph DeRita,* for plaintiff.
*Robert M. DeBias,* for defendant.

McANDREWS, *J.,* January 14, 1993—This matter is before the court on the motion of defendant, Bensalem Country Club Inc., d/b/a The Barn, for judgment notwithstanding the verdict or for a new trial, pursuant to Pennsylvania Rule of Civil Procedure 227.1. Plaintiff Mark McHale, on November 28, 1990, filed this civil action in trespass against defendant, seeking to recover damages arising out of injuries inflicted on the plaintiff while a patron at the defendant's establishment. This matter was tried without a jury on the dates of February 14 and March 2, 1992, before the undersigned. This court, having heard all of the evidence, found against

defendant and in favor of plaintiff and entered an award in the amount of $30,000. On March 10, 1992, defendant filed this motion for post-trial relief. For the reasons set forth below, this motion is denied, and the verdict stands.

## FACTS

The defendant is the owner-operator of a nightclub establishment known as The Barn. Live music is featured and alcoholic beverages are available for sale. The plaintiff testified that he arrived at The Barn on March 23, 1990, at approximately 9:45 p.m. and was asked for identification by three doormen attending the entrance way. At approximately 12:15 a.m. on March 24, 1992, the plaintiff was on the second floor of The Barn when he decided to leave. As he approached a stairwell leading from the second floor to the first floor, he was grabbed from behind the neck, picked up and pushed down the stairwell. Plaintiff fell on his face. The assailant was wearing a white polo shirt labeled "staff."

On the first floor plaintiff was restrained by two men wearing black satin jackets bearing the insignia of The Barn. He recognized one of those men as a doorman who had earlier requested identification from him. These two men repeatedly punched and kicked plaintiff about his body, upper body and legs. One of the assailants then pinned plaintiff against the wall, while the second continued to repeatedly punch and kick plaintiff. Soon the two men were joined in their assault by the man who pushed plaintiff down the stairwell. The two men held plaintiff tightly while the third repeatedly punched plaintiff's body. The three men then pushed plaintiff out the front door and told him to sit on a nearby rock. Plaintiff sat on the rock for 20 minutes waiting for medical assistance. No aid arrived. Plaintiff's testimony indi-

cates that he consumed eight bottles of beer between 7:15 p.m. and 12:15 a.m., although no evidence was presented that plaintiff was intoxicated.

Donna Slusarski, a patron at the nightclub on March 23, 1990, also testified and essentially corroborated the testimony of plaintiff. Ms. Slusarski observed the men punching and kicking plaintiff, and identified a jacket presented as an exhibit at trial which was similar to the jacket worn by one of the assailants. The jacket was the type worn by employees of The Barn.

Dr. Mark Medway, a board certified physiatrist at Jeanes Hospital in Philadelphia, Pennsylvania, testified that plaintiff came under his care on April 11, 1990. Dr. Medway treated plaintiff for seven weeks. Dr. Medway's diagnosis was persistent neck and chest pain caused by two fractured ribs, increased spasm and tenderness in the cervical paraspinal muscle and surrounding muscles, and local tenderness over the right chest wall. Dr. Medway approved of plaintiff's continued use of anti-inflammatory medication and prescribed a physical therapy program. Plaintiff further testified that because of his injuries, he was forced to miss 16 weeks of work.

Kevin King, the manager at The Barn, testified that the doormen wear white shirts with "The Barn" written on them, black pants and black satin jackets. He further testified that while the jackets have been worn by patrons, it is infrequent. Mr. King testified that doormen are never allowed to use force beyond taking hold of a person's arm and escorting that person outside. If a patron resists, the doormen were instructed to call the police. Any deviations from standard operating procedure were to be reported. No other witnesses were presented by defendant.

Having heard the evidence this court found that: (1) plaintiff was assaulted at The Barn by defendant's em-

ployees; (2) plaintiff did not provoke the assaults; and (3) defendant's employees were acting within their scope of employment.

A judgment notwithstanding the verdict should be entered only in a clear case, and any doubts should be resolved in favor of the verdict. *Atkins v. Urban Redevelopment Authority,* 489 Pa. 344, 414 A.2d 100 (1980). It is an extreme remedy, properly entered by the trial court only in a clear case where, after viewing the evidence in the light most favorable to the verdict winner, no two reasonable minds could fail to agree that the verdict was improper. *Robertson v. Atlantic Richfield Petroleum Products Co.,* 371 Pa. Super. 49, 537 A.2d 814 (1987), *appeal denied,* 520 Pa. 590, 551 A.2d 216 (1988). In considering a motion for judgment notwithstanding the verdict, the verdict winner must be given the benefit of every reasonable inference of fact arising from the evidence, and any conflict in evidence must be resolved in its favor. *Broxie v. Household Finance Co.,* 472 Pa. 373, 372 A.2d 741 (1977). The issue presently before the court is whether its findings of fact at trial were proper, viewing the evidence in the light most favorable to plaintiff.

Plaintiff has sustained his burden of proof on the issue of whether he was assaulted at The Barn by defendant's employees. Plaintiff testified that for no apparent reason he was repeatedly punched and kicked by three men, each wearing some part of The Barn's uniform. Plaintiff recognized at least one of these men as being a doorman that requested identification from him upon his arrival at The Barn. Plaintiff's testimony was substantially corroborated by Donna Slusarski who recognized two of the assailants as men who functioned as The Barn's doormen earlier in the evening.

No direct evidence was presented tending to prove that the incident did not occur. Rather, defendant would have the court conjecture that the assault did not occur based on Mr. King's testimony that, to his knowledge, the incident was not reported to those responsible for receiving incident reports. Defendant's burden cannot be sustained by conjecture. See *Anschel v. Pennsylvania Railroad Co.,* 346 Pa. 123, 29 A.2d 694 (1943). After viewing the evidence in the light most favorable to plaintiff, no two reasonable minds could fail to agree that plaintiff sustained his burden of proving that plaintiff was assaulted at The Barn by defendant's employees.

Second, defendant has failed to sustain its burden of proof on the issue of whether plaintiff provoked the assaults. *Wilbert v. Pittsburgh Consolidation Coal Co.,* 385 Pa. 149, 122 A.2d 406 (1956) ("Ordinarily, one who asserts an affirmative defense has the burden of proving it...."). Defendant's argument that plaintiff provoked the assaults was based solely on the fact that plaintiff had been drinking beer on the night in question. This assertion is purely conjectural and inadequate to sustain defendant's burden of proof. See *Anschel, supra.*

Third, defendant has failed to sustain his burden of proving that his employees were acting outside the scope of their employment. The general rule in Pennsylvania is that the employer is responsible for the tortious conduct of its employee if the conduct occurs within the course and scope of employment. *Johnson v. Glenn Sand and Gravel,* 308 Pa. Super. 22, 453 A.2d 1048 (1982). Pennsylvania courts have held that in order for the employee's tortious conduct to be within the scope of employment so as to render the employer liable, the injurious action must have been committed within the time and space of employment and the employee's activity must in some way further the employer's business. *Id.*

The assaults were not so grossly excessive as to absolve the defendant of liability. As the Superior Court stated, "[t]he master who puts the servant in a place of trust or responsibility ... is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury upon another." *Ash v. 627 Bar Inc.,* 197 Pa. Super. 39, 44, 176 A.2d 137, 140 (1961) (quoting *Orr v. William J. Burns International Detective Agency,* 337 Pa. 587, 590-91, 12 A.2d 25, 27 (1940)). The defendant's own witness, Kevin King, testified that doormen must maintain order at the bar. As part of this directive, doormen were authorized to grab a patron by the arm and "show him to the door." (N.T. King, p. 29). It is clear that the doormen were instructed to use reasonable force to control and/or remove disorderly patrons. Although the assault inflicted upon plaintiff was excessive conduct, the doormen's conduct was not so "grossly excessive" or "so excessive and dangerous, totally without responsibility or reason, that we are compelled *as matter of law* to absolve defendant of vicarious liability." *Howard v. Zaney Bar,* 369 Pa. 155, 157, 85 A.2d 401, 402 (1952). (emphasis in original) See also *Fitzgerald v. McCutcheon,* 270 Pa. Super. 102, 410 A.2d 1270 (1979). In *Zaney Bar,* the defendant, Zaney Bar's employee-bartender, while acting within the time and space of his employment, shot and seriously wounded a male patron, after the patron made advances to a female patron sitting at the defendant's bar. The Supreme Court held that the defendant, as employer, was not liable for the acts of its bartender in shooting the male patron because such action was so outrageous that it was not within the scope of employment. In the instant case, a deadly

weapon was not used by the employees. The assault here, albeit an act without responsibility or reason, was not "grossly excessive," considering the doormen's instructions.

Therefore, we must address the next issue regarding whether the doormen were acting within their scope of employment: Whether the doormen were furthering the interests of defendant by controlling a disorderly patron. "If an assault is committed for personal reasons or in an outrageous manner, it is not actuated by an intent of performing the business of the employer and is not done within the scope of employment." *Fitzgerald,* 270 Pa. Super. at 106, 410 A.2d at 1272. As was stated in *Fitzgerald:*

"The Restatement (Second) of Agency, §228, defines conduct within the scope of employment as follows: '(1) Conduct of a servant is within the scope of employment if, but only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of the force is not unexpectable by the master. (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.'" *Id.* at 107, 410 A.2d at 1272.

Three uniformed employees, acting in concert, shared the common goal of removing plaintiff from the premises. The desired result was consistent with what the doormen were instructed to do with disorderly patrons. Once outside the building plaintiff was told where to sit and wait. Such a command was given only with the apparent authority of the employer. This was not a case where one

doorman acted unilaterally with a purpose of his own. The doormen were acting as instructed and reacted according to instructions, albeit excessively. Therefore, the doormen were acting within their scope of employment when they assaulted plaintiff.

Defendant contends that the verdict was excessive. In Pennsylvania, the courts have consistently held that "damages are to be compensatory to the full extent of the injury sustained." *Kaczkowski v. Bolubasz,* 491 Pa. 561, 566, 421 A.2d 1027, 1029 (1980); see *Incollingo v. Ewing,* 444 Pa. 299, 307, 282 A.2d 206, 228 (1971); *McLane v. Pittsburgh Railways Co.,* 230 Pa. 29, 79 A. 237 (1911). Under Pennsylvania law, a plaintiff is entitled to be compensated for all past medical expenses reasonably and necessarily incurred and all future medical expenses reasonably likely to be incurred for the treatment and care of his injuries; past lost earnings and lost future earning capacity; and past, present and future pain and suffering. *Owens v. Peoples Passenger Railway Co.,* 155 Pa. 334, 342, 26 A. 748, 749 (1893); see *McClinton v. White,* 285 Pa. Super. 271, 277, 427 A.2d 218, 222 (1981) (survival action), *vacated on other grounds,* 497 Pa. 610, 444 A.2d 85 (1982). See generally, *Pennsylvania Suggested Standard Jury Instruction,* Civil, sections 6.01 A-1 (PBI 1981). "Infliction of pain means taking from a person what is his own to possess and retain, namely, health and well-being. Whoever robs another of that health and well-being is required by law to make recompense, to the extent that the deprivation may be calculated in money damages." *Thompson v. Iannuzzi,* 403 Pa. 329, 331, 169 A.2d 777, 778 (1961).

In this case, plaintiff was attacked from behind, pushed down a flight of steps and repeatedly kicked and punched by three men. The doormen took turns punching and kicking plaintiff while plaintiff was restrained by one

164

or more of the others. As a result of this assault, plaintiff sustained two fractured ribs, contusions, great pain and suffering, and loss of work. This attack occurred without explanation and without provocation. After the attack, he was pushed out the door and told to sit on a rock and wait. None of defendant's employees rendered any assistance to plaintiff.

Regarding plaintiff's injuries, Dr. Medway testified that Mr. McHale complained of persistent pain in the chest and neck areas. He had reduced motion at the avervical spine, increased spasm and tenderness in the cervical paraspinal muscles as well as local tenderness over the right chest wall. The x-ray findings indicated non-displaced fractures of the anterior eighth and ninth ribs on the right side. These multiple fractures were consistent with plaintiff's pain in the chest area. "Rib fractures when they occur or fractures of bone are quite painful no matter where they occur." (Deposition of Dr. Medway, February 6, 1992, p. 15-23).

In *Burgan v. Pittsburgh,* 373 Pa. 608, 613, 96 A.2d 889, 891 (1953), Justice Musmanno said:

"Pain and suffering are substantive losses and, for the same reason that a person is entitled to retain, against the encroachment of others, the full and unimpeded use of his limbs, organs and other parts of his body, so is he equally guaranteed freedom from physical and sensory torment. Pain and suffering, while existing, can be as much a disability as crippling, rupture or dismemberment. It is the jury's duty to appraise the pain and the agony of an anatomy in discord and to affix monetarily the responsibility of the person or legal entity which broke nature's harmony.

"The item of pain, suffering and inconvenience is also one of substance." *Bochar v. J.B. Martin Motors Inc.,* 374 Pa. 240, 245-46, 97 A.2d 813, 816 (1953).

In light of the excess nature of the assault, the resultant fractured ribs, contusions, and persistent pain and suffering, loss of wages, and the fact that the assault was not provoked, an award of $30,000 is not excessive.

Viewing the evidence in the light most favorable to the verdict winner, it is entirely reasonable for one to conclude, by a preponderance of the evidence, that plaintiff Mark McHale was unjustifiably assaulted by The Barn's doormen, without provocation and while the doormen were acting within the scope of their employment, and that an award of $30,000 is not excessive.

In passing upon a motion for new trial, it is necessary to consider the entire record to determine whether the verdict was arbitrary or capricious or whether it was against the weight of the evidence, or whether there was clearly error of law or palpable abuse of discretion in the rulings of the court. *Gonzalez v. U.S. Steel Corp.,* 248 Pa. Super. 95, 374 A.2d 1334 (1977), *aff'd,* 484 Pa. 277, 398 A.2d 1378 (1979). Only if the court concludes that the judicial process has effected a serious injustice may it grant a new trial. *Smith v. Barker,* 368 Pa. Super. 472, 534 A.2d 533 (1987), *appeal denied,* 520 Pa. 577, 549 A.2d 137 (1988). A new trial based on an error of law alone is not warranted and there must also be a showing that error influenced the verdict and led to an incorrect result. *Naccarati v. Garrett,* 351 Pa. Super. 437, 506 A.2d 428 (1986).

Plaintiff raises two instances, which he contends constitute clear errors of law which influenced the verdict and led to an incorrect result and serious injustice. These instances are addressed seriatim:

(1) Admittance into evidence over objection of hospital medical records which contained medical opinion.

Over the objection of the defendant, the court admitted into evidence as Exhibit P-1, medical records from Jeanes Hospital. The records contained a statement that the red

marks on plaintiff's neck were "strangulation" marks. This statement was admitted along with the entire record and defendant did not call the doctor's opinion to the court's attention. Without regard to the merits of this objection, the conclusion did not influence the verdict or lead to an incorrect result.

(2) The plaintiff's physician testified from physical therapy notes not in evidence.

Without regard to the merits of this objection, the court notes that any medical testimony by itself had a negligible impact on the total award of punitive damages and thus its admittance did not affect the verdict and was not a reversible error.

For all the above reasons, this court denies the defendant's motion and enters the following

### ORDER

And now, January 14, 1993, the motion of plaintiff Mark McHale for judgment notwithstanding the verdict or for a new trial is denied.