## May *v.* Warner Brothers Theaters, Inc., Appellant.

Argued April 19, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*H. E. McCamey,* of *Dickie, Robinson & McCamey,* with him *Swaney & Lucas,* for appellant.

*Thompson Bradshaw,* with him *A. G. Helbling,* for appellee.

OPINION BY STADTFELD, J., July 21, 1943:

This is an action of trespass brought by the plaintiff against the appellant for injuries sustained in the afternoon of December 10, 1940, as a result of a fall down a flight of stairs leading to the men's lavatory in the Prince Theatre operated by the appellant at Ambridge, Pennsylvania. Entrance to the flight of stairs leading to the basement from the first floor of the theatre was by means of an arch way. As one emerged from the arch way upon the platform at the head of the stairs, he would make a left turn to descend the steps. The ceiling was six feet and nine inches above the landing, and in this ceiling there was a recessed light fixture seven inches in diameter, flush with the ceiling. This light fixture was on a direct line with the left hand wall of the steps leading to the basement, and 25 inches back on a direct line from the edge of the first step. The plaintiff admitted that the lighting was sufficient once a descent had safely begun, but contended that due to the location of the recessed ceiling light, when a person made the left 90 degree turn to descend, his body came between the light and the first step, causing a shadow. Plaintiff in the instant case, while standing at the head of the stairs, could see the steps plainly but on making the first step forward over-stepped the first step and fell sustaining injuries. He did not attempt to make use of the hand rail available on the wall to his left until his fall had begun. The plaintiff claimed the appellant was negligent (1) in not properly lighting the steps because a shadow was cast on the steps by the plaintiff's body, and (2) in that the steps were improperly constructed, having a nine inch tread and an eight inch riser. The plaintiff offered testimony by an expert that the usual and customary construction of steps in public buildings is with a riser not to exceed seven inches, and a tread of not less than twelve inches.

The case was tried before a jury, and at the close of the case, appellant filed a point for binding instructions, which was refused, and the jury returned a verdict of

$1,251 in favor of the plaintiff. The court refused appellant's motion for judgment non obstante veredicto and judgment was entered on the verdict. The assignment of error is the refusal of the court below to enter judgment non obstante veredicto.

While the appellee having gained a favorable verdict and judgment in the court of first instance is entitled to the benefit of all inferences favorable to his cause, and though he is not bound to carry the burden of proving himself free from contributory negligence, yet he is bound to make out a case clear of it. *Martin v. Southern Pennsylvania Traction Co.*, 261 Pa. 96, 104 A. 397. The negligence of the plaintiff appears affirmatively from undisputed facts as presented in the testimony of the plaintiff himself, the only witness to the accident, as follows: "Q. All right, you say you started to turn to go down the steps. Then what occurred? A. Well, when I got my body in front, to make the steps, the reflection come from behind and darkened it; I couldn't see, so I overstepped the step. Q. What happened to you? A. Well, I made a grab to try to catch myself, but there was no chances, so down—I didn't know anything after that. Q. Now you say—what did you say about the light in the back? A. It wasn't so good.

"...... Q. Now when you stepped to go down the steps, as you say, and the light was in back of you, what happened in regard to the light on the steps? A. Well, it was darkness with me when I put my foot out to step down on the first step, and I overstepped it. Q. Now as you put your foot out to step down, could you still see the step? A. That's when I lost all reflection of the light, altogether. Q. When you began to put your foot out—A. When I put my foot out—Q. Now listen—could you see the step then? A. No, I couldn't. You know, just when I went to step down the reflection of the light was dead on me. Q. At the time, or before you went to step, could you see the step? A. I could see it, the step, yes, sir, before I went to step."

Under cross-examination the plaintiff further testified as follows: "Q. And so when you came through the door on to this little landing—or, as you went on to this (indicating), you could plainly see steps going down to your left, couldn't you? A. When I got to the front of the steps I could see the steps. Q. Yes; as you came to the door and stepped part way into this, we will say, you saw steps going down to your left? A. You had to walk a little bit to see the steps. Q. All right; say you walked two or three feet, or something—but when you got there you plainly saw steps going down, didn't you? A. Yes, sir. Q. And you didn't have any trouble seeing them at this time? A. No, sir. Q. There was a railing on them, was there? A. Well, that railing is down a little ways from the top of the steps. Q. Well, there is a railing down the left side, isn't there? A. Yes, sir, there is a railing there.

"...... Q. So that when you came in and stopped, you stopped at that point 'Y', and you plainly saw the steps in front of you, didn't you, at that time? A. Yes, sir. Q. You also saw the railing right to the left, didn't you? A. Yes, sir. Q. And then what did you do after that? A. What do you mean—to go down? Q. Now, after you stopped there and saw the steps, and saw the railing, and they were all fully lighted, what did you do after that? A. I stepped over this step here (indicating); my heel caught on this first step here (indicating), and that's what throwed me; I tried to grab hold, but couldn't. Q. You did reach for the railing before you took the step didn't you? A. No, I didn't.

"...... Q. So that in standing at this point 'Y', your toes were practically at the edge of the platform and you were facing down, is that right? A. Yes, sir. Q. Now then, standing in that way, you could plainly see the top step; is that it? A. Yes, sir. Q. But when you stepped forward just enough to take you down on to

the first tread, you say that it got hazy in front of you? A. Yes, sir. Q. And you think it was your shadow that made it hazy? A. It must have been. Q. It must have been—Are you sure about that? A. Well, the way the reflection come so awfully quick. Q. You mean, all at once something seemed to show black; is that it? A. Yes, sir. Q. What made you think it was a shadow? A. I don't know for sure—but why didn't the light show when it killed my vision of the step? When I went to step there was where the darkness come. Q Isn't this a fact, Mr. May: You were standing there with your feet at the edge of the top platform; you could plainly see the step at that time, the first tread; but as you started to step everything went black; is that it; is that right? A. Yes, sir, when I made the stride. Q. And you come to the conclusion that was your shadow, don't you? A. Yes, sir.

"...... Q. And you started to put your right foot on that tread; is that right? A. Yes, sir. Q. You could see it then, could you? A. Yes, sir. Q. It wasn't black then? A. No, sir. Q. Why didn't you put your foot on it? A. I told you, my vision got away from me just as I was making the stride to go down the step."

Plaintiff's conduct under the above circumstances shows clearly that he failed to exercise ordinary care in his own behalf. When he found himself at the head of the stairs and found that his shadow would darken the first step ahead of him, reasonably prudent conduct on his part required that he feel carefully with extended foot for the elusive step, as one naturally does when approaching a step in the dark. *Murray v. Earl*, 282 Pa. 517, 520, 128 A. 436. In addition, the plaintiff might well have taken advantage of the hand rail placed there for purposes of safety to steady his advance and to insure safe conduct. "Shadows, where the lighting is otherwise adequate, furnish no excuse for failure to see. *Mammana v. Easton Nat. Bank*, 338 Pa. 225, 227,

12 A. 2d 918." *Lewis v. Duquesne Inclined Plane Co.*, 346 Pa. 43, 44, 28 A. 2d 925.

The testimony of the plaintiff clearly shows that he knew all of the conditions, that everything was apparent to him, and that he failed to exercise due care for his safety. There is nothing left for this court to do except to declare judicially that the plaintiff under the circumstances was guilty of contributory negligence as a matter of law precluding recovery on the case he presented, this without deciding whether or not the appellant was negligent either in the lighting facilities it maintained or the construction of its stairs.

The judgment in favor of the plaintiff is reversed and now entered for the defendant appellant.