## Murray, Appellant, *v.* Earl.

*Negligence—Elevator—Falling down elevator shaft—Death— Contributory negligence—Judgment n. o. v.*

1. A person who is familiar with the conditions affecting the safety of the approach to an elevator shaft, and who walks into the open shaft without proper care, although he could have seen his danger if he had looked, is guilty of contributory negligence, and no damages can be recovered for his death.

Argued January 26, 1925. Appeal, No. 102, Jan. T., 1925, by plaintiff, from order of C. P. Berks Co., Feb. T., 1922, No. 43, making absolute rule for judgment for defendant n. o. v., in case of Mamie Murray v. Clinton F. Earl, individually, and trading as M. J. Earl. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Trespass for death of plaintiff's husband.    Before ENDLICH, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $5,000 on which judgment was entered for defendant n. o. v.

*Error assigned* was, inter alia, judgment for defendant n. o. v., quoting record.

*Cyrus G. Derr,* with him *Oliver M. Wolff,* for appellant, cited: Donohue v. Tel. Co., 57 Pa. Superior Ct. 251; Cramer v. Aluminum Co., 239 Pa. 120.

*H. P. Keiser,* with him *John H. Bridenbaugh* and *J. Wilmer Fisher,* for appellee, cited: Mills v. Brandes, 235 Pa. 319; 9 R. C. L. 1258.

PER CURIAM, March 16, 1925:

The jury rendered a verdict for plaintiff; a rule for judgment n. o. v. was made absolute; this appeal ensued.

We adopt the following excerpts from the opinion of the court below: "This action of trespass is brought by the widow of Nathan Murray in behalf of herself and their minor children to recover damages for the death of her husband, a man......about 38 years of age, and in good health,—his death being caused by falling into a freight elevator shaft on defendant's premises,—on the ground, as alleged in the statement, that the defendant was negligent in failing to protect and keep protected the said elevator and shaft, to provide proper appliances therefor, to provide for the lighting thereof, and to light the room in which the said elevator and shaft were located, so as not unreasonably to endanger the lives of persons lawfully going and being there......At the trial, the plaintiff based her charge of negligence against the defendant upon the allegation, and submitted evidence to show, that he failed to have the room from which the elevator was entered, and the entrance to the

elevator itself, so adequately lighted as to enable persons who had a right to use the elevator to do so with reasonable safety, and that, in consequence of his neglect so to do, plaintiff's decedent lost his life.   [This is the only ground pressed on appeal.]

"The defendant had leased to the Harold Furniture Co., Inc., a room on the [fourth] floor front......of a certain building in the City of Reading, with the joint use of the elevator, for the storage of the lessee's merchandise.  On the morning of January 19, 1921, Murray, an employe of the furniture company, was sent to the storage house with a truck, in company with three others, to remove and take to the furniture company's store certain articles which had been sold the day previous. Arriving at the storage house at about 25 minutes of eight, Murray, who drove the truck, proceeded to back it up to the door of the room in which the elevator was located while his companions entered the building, one of them ascending the stairway leading to the fourth floor, another by the name of Machinkowski going directly to the elevator in order to bring it down so that those still on the ground floor might ride to the fourth floor.  The elevator shaft was protected by a gate five feet in height, which could be raised but had to be held as long as it was desired to keep it in that position, unless the elevator was on that particular floor, in which case the gate could be held up by hooking it on to the elevator,...... Machinkowski raised the gate in order to see where the elevator was.  Finding it was at the third floor, he continued holding up the gate with his left hand to a distance of five or five and a half feet from the floor, and, with his right hand, grasped the cable and started the elevator down.  While he was thus engaged, the fourth member of the party, named May, stood by his side for a few moments, then walked out to the truck, passing Murray (who was on his way in), turned, and walked in again just in time to see Murray going down the elevator shaft 'with his feet up in the air.'  Machinkowski testi-

fied that he did not see Murray and that the latter could not see him holding up the gate [not for lack of light but] because the view was obstructed by a box or guard enclosing the cables......

"The deceased had been in the......employ [of the tenant of defendant landlord] for over six months before the accident, visiting the place on an average once a day for the purpose of removing furniture. During that period he had seen the elevator operated by others, and had operated it himself about fifty times. Consequently he knew the place well, and of course knew the location of the elevator. He also knew that the manner in which the elevator was operated left the elevator shaft unprotected until the elevator could be brought to that particular floor. He was entirely familiar with all the conditions capable of affecting the safety or unsafety of the place. It was his duty therefore to be on his guard and to exercise care when he approached the elevator shaft. If it was so dark that he could not see, he had other means of ascertaining whether the elevator was there, as, for example, by stepping cautiously and feeling with his foot, as one naturally does when approaching a step in the dark, or by calling to his companions. In such a case the rule applies that 'where the entrance is dark, it would seem that ordinary care would condemn the act of a person who steps into an elevator shaft [knowing its location] without satisfying himself that the elevator is there': R. C. L., p. 1258. But there is more than that in this case. Assuming, as we must in view of the jury's findings (see Daniels v. Coal & Coke Co., 279 Pa. 47), that the light entering the room by the door and window was insufficient and that the room was [a dark one], nevertheless the uncontradicted testimony of plaintiff's principal witness [with established facts in plaintiff's case] shows that decedent could have seen the elevator was not there if he had looked. ......In these circumstances the conclusion seems irresistible that decedent could have fully protected himself by the use of his senses; that his walking into the open

shaft without making use of the means at his disposal to satisfy himself the elevator was there, was an act of contributory negligence, and the court is bound so to declare it: Pawling v. Hoskins, 132 Pa. 617; Gallagher v. Snellenburg, 210 Id. 642; Cutler v. Bakery Co., 273 Id. 59; and see Henessey v. Wabash Mills Co., 235 Id. 31, 33."

The argument of plaintiff's counsel that it may be Murray came to his death by some slip or accidental movement on his part not amounting to contributory negligence, as, for instance, stumbling over his own feet just at the gate of the elevator, lacks support. There is no suggestion in the evidence that the accident so happened, and persons advancing with the care usually taken by those walking in a darkened room would not be at all apt to fall in that way; all the probabilities suggested by the evidence point to the likelihood of this unfortunate man having carelessly walked into the shaft while a fellow employee held the gate open, and that he came to his death in this way is the only reasonable conclusion.

The judgment is affirmed.