Hoffner et ux. v. Bergdoll, Appellant.

Argued December 2, 1932.  Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Errors assigned,* inter alia, were refusal of judgments n. o. v., quoting record.

*David R. Griffith, Jr.,* for appellant.—Plaintiff was contributorily negligent: Robinson v. Ice Co., 292 Pa. 367; Goff v. Boro., 299 Pa. 343.

*Lewis J. Finestone,* for appellee.—Where men may honestly differ on the question of negligence, the matter is for the jury: Cody v. Venzie, 263 Pa. 541; Schwartz v. Phila., 103 Pa. Superior Ct. 362; Yuhasz v. Construction Co., 305 Pa. 166.

OPINION BY MR. JUSTICE LINN, January 3, 1933:
Plaintiffs, husband and wife, have judgment for personal injury sustained by the wife.  The question is whether defendant's motion for judgment notwithstanding the verdict should have been granted.  Appellant contends that there is no evidence of negligence, and that plaintiff's contributory negligence is clear.  He was sued as owner of premises numbered 116 to 122 North

8th Street, Philadelphia, a large four-story building fronting on 8th Street and bounded on the south by Appletree Street, an alley 10 or 12 feet wide. The fourth floor was leased to one Rosengarten, for the manufacture of paper boxes. The second floor was leased to a dress manufacturer. Of the first floor, only a small area fronting on 8th Street was leased to a "soft-drink concern." The rest of the building was unoccupied save that, apparently by defendant's leave, Rosengarten used part of the unleased portion of the first floor (in his words) "to keep card boxes there—they were pretty unhandy to bring up, and I used to store them there and take them upstairs gradually."

In the extreme southwestern corner of the building, on the alley front, was a freight elevator, described in the evidence as "something like 8 or 10 feet," and operating in a space "enclosed on four sides." From the alley, access to the elevator was obtained by a door (described "as wide as the elevator floor") which was opened by raising it; one stepped directly from the alley to the elevator floor. Defendant's lease to Rosengarten provided: "The lessee shall be entitled to the use of the freight elevator during working hours as all other tenants of the same building, the lessor shall also see that the tenants shall be provided with the proper amount of heat during necessary time, the lessor shall also see that the tenants shall be provided for with repairs when necessary:" Lerner v. Bergdoll, 285 Pa. 193, 195, 131 A. 670. No operator was furnished for the elevator; it was operated by or on behalf of the tenants themselves. A stairway, entered from 8th Street, at the northeast corner of the building, furnished general access for all purposes to all the floors above the first.

Mrs. Hoffner, who shall be referred to as the injured plaintiff, was employed by Rosengarten on the 4th floor, November 14, 1929, to operate a machine used to make paper boxes. The first time she went to her work she walked up the stairway "around ten-thirty;" she testi-

fied that she found on it some intoxicated men of whom she was afraid but she walked down the same stairs, without difficulty, at quitting time. On the next morning, on her way to work, she met William Green, also employed by Rosengarten; Green said, "Come on, I'll take you up on the elevator," and she accepted his invitation. The door leading from the alley to the elevator was then open, and, they stepped on the elevator and went to the fourth floor, Green operating the car. At the end of the day Green brought her down and she left by the alley. On the morning of the 16th she again met Green who again invited her to go up on the elevator with him. When they reached the elevator door this time, however, it was closed and Green could not open it. About 3 feet from the elevator door, was a door of ordinary size giving entrance to the first floor of the building. Green opened that door and entered, intending to reach the elevator on the side opposite the alley-side, and the injured plaintiff followed him in. After groping about in the dark, they passed through the fire door, apparently separating the elevator from the rest of the first floor, when plaintiff, thinking the elevator was in place, stepped where she thought it might be, and fell down the elevator shaft and was injured. Defendant put in no testimony.

There is evidence to support a finding that defendant landlord was negligent in allowing the elevator to remain out of order in the manner and for the period and with the notice from the city authorities described in the evidence, so that the gate, which normally would have closed the shaft when the car was at another floor, did not close, leaving, on this morning, no barrier to prevent stepping into the shaft. But as the injured plaintiff was so clearly guilty of contributory negligence as to bar recovery, we shall assume, for present purposes, the landlord's liability to licensees for the negligent condition of the premises without discussing the basis for it: Fordyce v. White Star Bus Lines, 304 Pa. 106, 110, 155 A.

98. In dealing with her conduct, for present purposes, we also assume, without discussion, that in entering the building from the alley, instead of by the regularly provided stairway, she was a licensee (cf. Silver v. Hause, 285 Pa. 166, 171, 131 A. 668) and not a trespasser as appellant contends.

Green and the injured plaintiff furnish the only account of the occurrence. Both agree that when they entered from the alley, they were in a place so dark that almost nothing could be seen, this condition with its attendant danger, was obvious to both from the time that the injured plaintiff closed, or almost closed, the door behind her. Before that, she had never been on any part of the first floor. To reach the point where they intended to get on the elevator, it was necessary to walk forward a short distance and then turn to the left—perhaps 15 steps in all. Green walked ahead of her. He said, "I walked around to what you might call the fire doors in front of the elevator. These doors were open. One door was open against the wall, and the other door was open just enough to start in to the entrance of the elevator shaft. I walked in there. I had to feel with my hand for the door [apparently meaning the elevator gate, which was out of place] and get hold of that back wall to avoid falling down myself. There was nothing there to prevent you from going straight down into the hatchway." The elevator was at an upper floor. In the darkness, Green seems to have reached into the elevator shaft to grasp the rope controlling the operation of the elevator to bring it down to the first floor. He states that "it was exceptionally dark in the elevator [shaft] and you couldn't see anybody......so I turned around to say something to [her] and not finding her, just at that time I heard a moan from somewhere down in the cellar." He could not see her then. He said: "There wasn't any [light] that I know of, no artificial light." No windows "threw any light on the first floor." He had been employed by Rosengarten for about six months be-

fore, and used the elevator almost daily. In response to another question, he said: "No, I wouldn't say that you couldn't see anything, but it was dark." Asked whether he could see the rope for which he reached he said: "No I had to feel around for it that morning." "I had, you know, an approximate idea just about where it was." The learned trial judge asked: "Q. When this lady walked into this elevator shaft, you were leaning down over the shaft, were you? A. Yes, sir. Q. Pulling the rope? A. Pulling the cable down. Q. You say the shaft was dark? A. Yes, sir. Q. Well, if she had looked, couldn't she have seen that there was no elevator there? A. I couldn't see the elevator myself. I couldn't see the elevator floor there myself. Q. You mean you looked down right in front of you? A. No, sir, you couldn't see the elevator. Q. What prevented you from falling? A. I held on to the—I had like my fingers behind the doorway so that I wouldn't fall down the shaft. ......
Q. Couldn't you see the black space of the pit down below? A. It was too dark...... Q. But it was so dark you couldn't see? A. Absolutely. Q. Couldn't you see whether there was a floor of an elevator or a bottomless pit? A. No, sir, I could not." He also testified that he did not warn the injured plaintiff.

She testified that she walked about two feet behind Green. "Q. Could you see the floor in front of you as you were walking? A. No, sir, it was too dark. Q. But could you see Mr. Green? A. I could just about see his form. Q. You could just about see his form, and you just followed right behind him? A. Yes. Q. How did you walk? A. I walked very slowly, took small steps. ...... Q. Now, you say Mr. Green stopped? A. Yes, sir. Q. Then why did you continue to walk, Mrs. Hoffner? A. I thought he stopped there to let me pass in there first. I thought I was walking right into the elevator. Q. Had you ever been on that first floor of the building before that day? A. I was never on the inside before." The learned trial judge asked her: "Q.

Couldn't you see where you were going? A. No, it was too dark, couldn't see a thing. Q. Actually too dark to see the floor? A. Yes, sir." Asked about lights in the shaft, she said "no lights at all." "Q. Could you observe Mr. Green's form? A. I could just about see his form. Q. What was it that enabled you to see his form, you just said it was dark? A. He had something white on. Q. He had on something white? A. I don't know whether it was a shirt or what. No, he had a white sweater on, I believe. Q. You think he had on a white sweater? A. Yes. Q. You, in matter of faith, presuming that you saw this form like pushing or stepping to the side, then you assumed or presumed to keep on walking, did you not? A. Yes."

Plaintiffs contend that the injured plaintiff was excused from exercising care by relying on Green; that, though he led her without warning, into a strange place, so dark that she could not see where she was going, her trust in him should be considered the exercise of reasonable care by her for her own safety. For that proposition, they rely on Young v. P. R. T. Co., 248 Pa. 174, 93 A. 950. It appeared in that case that in driving out of his stable plaintiff was required to cross street railway tracks without opportunity to look for approaching cars after he started driving; he not only looked for them before entering his buggy, but asked a neighbor, standing where he could see, whether any was approaching, before he started to drive, and was told that none was in sight; he then drove out and was struck by a street car before he cleared the track. It was held that contributory negligence was for the jury. But in the course of the opinion, it was stated that, on the facts which the jury might find, it could not "......be said as a matter of law that the plaintiff......placed his fate in the hands of Mr. Snyder [the neighbor] depending exclusively on the latter's care; no more can it be said as a matter of law that Mr. Snyder was careless in not observing the approaching car and notifying his neigh-

bor in time to enable him to avoid the accident......"
Obviously, the rule applied in that case does not support
plaintiffs' position. If Green had sustained injury by
falling down the elevator shaft, his contributory negli-
gence would have barred recovery: Murray v. Earl, 282
Pa. 517, 128 A. 436; Davis v. Edmundson, 261 Pa. 199,
104 A. 582; Fordyce v. White Star Bus Lines, 304 Pa.
106, 155 A. 98; Conboy v. Osage Tribe, 288 Pa. 193,
135 A. 729; Hardie v. Barrett, 257 Pa. 42, 46, 101 A. 75;
Ballou v. Collamore, 35 N. E. 463; Bedell v. Berkey, 43
N. W. 380. If Mrs. Hoffner had made the search for the
elevator alone, and had fallen into the well, she could
not have recovered, as the brief filed on her behalf seems
to concede. The question, then, is can she recover be-
cause she went in with Green? Is the invitation of
Green sufficient to remove the effect of what otherwise
would have been her contributory negligence? He was
not defendant's servant or authorized on his behalf, or,
for that matter, on behalf of their employer, to invite
the injured plaintiff to do anything; he had no author-
ity of any kind over her.

Does it appear, then, that she did not conduct herself
with reasonable regard for her own safety? failed to ex-
ercise ordinary care in the circumstances?

Adapting the language of Young v. P. R. T. Co., supra,
defining what would have been contributory negligence
as matter of law, it is clear that she placed her "fate in
the hands of" Green, "depending exclusively" on him.
She delegated performance of a nondelegable duty. She
rejected the stairway from 8th Street and sought her
way about, for the first time, in a dark passageway or
room; in making that choice, she was bound to assume
the risk of her voluntary conduct in such a place if she
could not see; the very darkness described in this rec-
ord was notice of possible danger. If the case be con-
sidered as one in which she made Green her agent, or
servant, the familiar rule requires that she suffer the
consequences of her servant's negligence. While the

guest is not "ordinarily bound to the same degree of diligence as the driver of the car;......he is nevertheless not relieved from the duty to take due precautions for his own safety......though he may assume that the driver will perform his duty :" Alperdt v. Paige, 292 Pa. 1; see cases cited, page 7, 140 A. 555; Gallup v. Pittsburgh Rys. Co., 295 Pa. 203, 206, 145 A. 73; Simrell v. Eschenbach, 303 Pa. 156, 162, 154 A. 369. The guest, knowing that his host is traveling at excessive speed (Wagenbauer v. Schwinn, 285 Pa. 128, 131 A. 699) or on the wrong side of the road (Renner v. Tone, 273 Pa. 10, 116 A. 512), must warn him to comply with the law, and, in default of warning, if injured, will be held to have contributed to his own injury. If he stands on the running board of a moving automobile (Schomaker v. Havey, 291 Pa. 30, 139 A. 495) or on the platform of an open truck, instead of occupying the vacant seat beside the driver (Zavodnic v. Rose, 297 Pa. 86, 91, 146 A. 455), he is guilty of contributory negligence. Other illustrations might be given. Plaintiff could not delegate to Green her duty of exercising due care; there is no dispute of fact.

The judgments are reversed and judgment is here entered for the defendant.

Mr. Justice MAXEY dissented.