## Douville *v.* Northeastern Warehouse Company, Appellant.

Argued December 6, 1939.   Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*C. Donald Swartz,* of *Swartz, Campbell & Henry* and *Herbert A. Barton,* for appellant.

*Joseph J. Tunney,* for appellee.

OPINION BY MR. JUSTICE MAXEY, January 2, 1940:

Plaintiff brought an action in trespass against defendant to recover damages for the death of her husband, Clarence J. Douville, who was fatally injured when he fell into an open elevator shaft on defendant's premises. The jury returned a verdict for $7,017.00 in favor of the plaintiff, and defendant thereupon filed motions for judgment n. o. v. and for a new trial, which were refused, and judgment was entered on the verdict. Defendant appealed.

Douville was employed as a customs warehouse storekeeper by the United States Treasury Department, and for a year prior to the accident he had been stationed at defendant's warehouse. His duties consisted of supervising the placing and removal of material in the bonded section of the warehouse, which section was located on the second floor and was kept locked. Douville was in possession of the keys to it. Whenever materials were put in or taken out of bond it was necessary to use the elevators, but Douville never operated them.

On the first floor of the warehouse there were two sections known as A and B. They were divided by a fire wall and access between them was by means of a fire door leading through the wall. The A section of

the warehouse was occupied by defendant and the B section by a tenant, Hemphill & Co. Shortly before 5 o'clock on August 13, 1937, Douville was supervising the moving of certain bales of wool from a portion of the first floor of the premises occupied by Hemphill & Co., up to the bonded section of the warehouse. Two men were assigned to do the actual moving under Douville's supervision. At the end of the dividing wall there was a freight elevator, to which access could be had from either section. Just as the two workmen were approaching the freight elevator from the B section, they saw Douville walk into the elevator shaft from the A section side and make his fatal plunge to the cellar floor below. The safety gate on the A side was open, although the elevator was at a different floor. Appellant does not contest the jury's finding that this condition was due to the negligence of its servants. Its only claim is that Douville was guilty of contributory negligence and that the court below should so have declared as a matter of law. Both the presumption and the jury's finding are, of course, in his favor. It is only in a clear case where the evidence is such that reasonably minded men can unite in the conclusion that a victim of an accident was negligent, that a *court* is justified in declaring him so. See *McCracken v. Curwensville Borough*, 309 Pa. 98, 114, 115, 163 A. 217, and *Rowland v. Canuso et al.*, 329 Pa. 72, 196 A. 823.

As to whether or not Douville was negligent depends on the condition as to light near the elevator shaft as he approached it. If an elevator shaft is properly lighted, a person who approaches it is charged with the duty of seeing whether or not the elevator door is open when the elevator is not at that floor. Dangers which are apparent to ordinary observation must be avoided by those who approach them. See *Cracraft v. Bessemer Limestone Co.*, 210 Pa. 15, 59 A. 432, and *Gallagher v. Snellenburg*, 210 Pa. 642, 60 A. 307. On the other hand, a person who approaches an elevator

or an elevator shaft in a place so dark that scarcely anything is visible does so at his own risk and if, while thus enveloped in darkness, he is injured by colliding with an object or falling into a hole, he will be adjudged guilty of contributory negligence as a matter of law. *Hoffner et ux. v. Bergdoll,* 309 Pa. 558, 164 A. 607.

The third class of cases is where a person walks in a dim light and has reason to think that an elevator is at the floor when in fact it is not and he uses his best judgment as he proceeds and then meets with an accident. In such a case the question of his contributory negligence is for the jury: *Murphy v. Bernheim & Sons, Inc.,* 327 Pa. 285, 194 A. 194. In that case we said: "The fact that elevator shafts are no longer places of probable danger is a fact which individuals carry in their subconscious minds when they approach them and therefore they do not normally approach them with the utmost degree of caution. When one becomes accustomed after long experience to finding elevator shafts safeguarded, he naturally takes it for granted that all elevator shafts are safeguarded. This does not excuse him from taking care but it decreases the degree of care the law imposes on one who would escape the imputation of negligence." See also *Dively v. Penn-Pittsburgh Corp.,* 332 Pa. 65.

As to the condition of illumination near defendant's elevator shaft at the time of the fatal accident to plaintiff's decedent, the evidence is that there were no windows to admit daylight, that there were a number of 40-watt electric lights in the ceiling, the nearest one of which to the elevator shaft was 20 feet away from it. There was also a 40-watt "drop light" in front of the elevator shaft but at the time of the accident this was turned off. It was also testified that "the light in front of the shaft on the B side" was lighted, that the ceiling in the A section was "12 or 13 feet high," that there was "more or less merchandise stored on the floor, that keeps coming in and going out, . . . in the neighborhood

of a thousand bags of malt," that the merchandise was piled high, forming "aisles," and that there was a "clearing about 9 or 10 feet square" in front of the No. 1 elevator where Douville fell. On the B side of the warehouse bales were piled up "pretty near to the ceiling," and there were also 7 bales of wool, "2 feet wide" and "4' or 5' tall," the nearest bale being about "4 feet from the elevator shaft," which were to be placed in the bonded section of the warehouse.

The fact that the 40-watt light described as "right in front of the elevator shaft" was out at the time of the accident supports the inference that the illumination at that place at that time was considerably less than the illumination found there normally. The fact that there were "bags of malt" piled up "12 or 13 feet high" in the A section (as described by a witness) supports an inference that these piles affected the illumination from the ceiling lights, the nearest one of which was 20 feet away from the elevator shaft, and would cause shadows to be cast on the narrow aisle Douville had to traverse to reach the shaft. It is a matter of common knowledge that nothing is more confusing to the vision than alternate lights and shadows, whether these are found on the highway where one is motoring or in a room where one is walking. One witness described the light that was 20 feet away from the elevator shaft as being on "a drop cord." He added: "All the lights were on drop cords." If such was the fact (and the jury *could* so find) and bags of malt were piled up "12 or 13 feet high," these lights would not deliver effective lighting at the entrance to the elevator shaft.

Under our decisions the case was for the jury and we agree with the statement made by the court below in refusing to enter judgment n. o. v.: "The jury was justified in concluding that the entrance to the freight elevator was in shadow, or in a very dim light."

The judgment is affirmed.