Brewster *v.* Morrone, Appellant.

Argued March 24, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

*J. Glenn Berry,* for appellants.

*Howard W. Lyon,* for appellee.

OPINION BY MR. JUSTICE BELL, May 28, 1959:

Plaintiff recovered a verdict in trespass for personal injuries. Defendants' motion for judgment non obstante veredicto was dismissed, and from the judgment entered on the verdict, defendants took this appeal. In considering defendants' motion for judgment n.o.v., we shall of course consider the evidence and all reasonable inferences therefrom in the light most favorable to plaintiff.

Plaintiff, who was 31 years of age and blind in one eye, was employed by a catering concern near New Castle, in Lawrence County. His duties were to deliver coffee and sandwiches to various factories and garages where he could likely sell the food to employees in such factories. Defendants conduct a small auto body shop in a building made of cement blocks on East Washington Street Extension, next to the Ellwood

City-New Castle Road, a public road. For 6 days a week and for 6 months prior to the date of the accident on April 29, 1955, plaintiff had sold coffee and sandwiches in defendants' shop to their employees. On the morning of the accident plaintiff arrived about 11 o'clock a.m., as was his custom, and called "coffee man". It was a bright day, the sun was shining, the body shop was filled with light, and visibility was excellent. Plaintiff saw a large automobile about 4 feet ahead of him. He walked forward without looking at the automobile because his attention was directed to tools on the floor. As he walked along the floor looking at the floor, his head struck a large plank which was used to raise the body of the automobile from the frame or chassis in order to change frames or make necessary repairs. This 2 by 6 inch plank was 10 feet long. The ends of the plank were equipped with U-bolts attached to chains extending from a pulley which, in turn, was attached to a slide on the garage ceiling. By this means they were able to hoist the body of the automobile and thereby remove the chassis. It extended through the window of the automobile (which was being repaired) from 2 to 4 feet over the floor of the defendants' shop between the automobile and the East wall of defendants' shop. Plaintiff testified he struck his left eye on this plank and was knocked to the floor. No one saw the accident as defendants' employees were at that time in the rear of the shop. There were 24 panes of clear glass in each of the two large garage doors in defendants' body shop and the accident occurred about 15 feet from these doors.

Plaintiff was assisted to his feet by defendants' employees and after assuring them that he was all right, continued the balance of the day to see his regular customers. Plaintiff about 6 weeks later lost the sight of his left eye, which left him totally blind. There

is no evidence that defendants had any knowledge before the accident that plaintiff had lost the sight of his right eye.

Two questions are presented: (1) Did plaintiff prove that defendants were guilty of negligence; and (2) Was it clear as a matter of law that plaintiff was guilty of contributory negligence? Both questions must be answered in favor of the defendants.

Plaintiff alleges that defendants were negligent because they permitted tools to lie on the floor, and they permitted the plank to extend from the window of this car and failed to warn plaintiff of the danger of this plank, and because they failed to erect a barricade around this dangerous area.

Plaintiff produced no evidence that defendants were engaged in any enterprise in a manner other than standard operating procedure in a repair shop. The raising of an automobile body by means of a large plank or lever is an absolutely essential operation in the conduct of defendants' business and to require every little body maker or repair shop owner to barricade this or other essential and *obvious* operations would be so confiscatory as to impose a burden unwarranted by reality or law.

Even if it be assumed, arguendo, that plaintiff was a business invitee, as distinguished from a mere licensee,* plaintiff failed to prove that defendants were negligent: *Rogers v. Max Azen, Inc.*, 340 Pa. 328, 16 A. 2d 529. In that case plaintiff, who was a customer in defendant's store, tripped over a half inch base by which a bannister was anchored to the floor and on

---

* The duty which an owner or possessor of land owes to a business invitee is at least as great and, in most cases, greater than the duty owed to a mere licensee. If plaintiff was a licensee he clearly could not recover. See §341 of the Restatement of Torts, Comment a and Comment d, page 928.

which it rested. This Court entered a judgment n.o.v. and said (page 330): "Ordinarily no liability attaches for injuries from alleged dangers or defects which were obvious or known to the person injured, for, all that the law requires is that the premises be so constructed and maintained that they can be used without danger by persons *using ordinary care* for their own safety."

In *McCreary v. Westmoreland Farm Bureau Cooperative Association,* 357 Pa. 567, 55 A. 2d 399, the Court said (page 570):

"[While it is] the duty of a possessor of premises toward a business invitee . . . to keep the premises in a reasonably safe condition or warn of dangers thereon which the occupier knows or should know exist . . . [t]here is no duty, however, upon the possessor of land to warn or guard a business invitee against a danger that is obvious."

See to the same effect: *Macalady v. Whelan Drug Co.,* 179 Pa. Superior Ct. 563, 117 A. 2d 811; *Burckhalter v. Woolworth Co.,* 340 Pa. 300, 16 A. 2d 716; *Wurster v. Armstrong,* 145 Pa. Superior Ct. 583, 21 A. 2d 650.

We summarize: To allow a jury to find that the defendants were negligent in this case would place an unreasonable and confiscatory burden on all body shops, garages, service stations and factories in Pennsylvania and would make the owners thereof insurers. That is not the law.

Plaintiff admitted that he could see well, and daily drove an automobile. It is obvious from the testimony that he could have seen the plank if he had looked where he was walking. It is indisputable that plaintiff had actual knowledge of the kind of work that defendants performed in this auto body shop and the conditions under which the work was done, because he had come into the shop for 6 days a week for 6 months

before the accident occurred. A plaintiff cannot impose liability upon the owner of property if he walks thereon without using his senses; he cannot recover if he blindly walks into a projecting object which was obvious and which he could have seen if he had looked. Failure to look, under such circumstances, or failure to see what was obvious if he had looked, cannot absolve him from contributory negligence.

On both direct and cross examination plaintiff testified that he did not see the plank "before I struck it. Q. Couldn't you have seen it if you looked in that direction? A. Possibly I would have. Q. Anyway you didn't look, is that right? A. I looked in a general direction, just glanced down. . . . the car was dark and this plank was dark and the sun caused shadows."

Plaintiff testified, we repeat, that it was a bright day, the sun was shining through the windows and doors of the garage, the body shop was filled with light, and the visibility was excellent. There is no obligation upon the defendants, in the exercise of reasonable care, to follow the sun throughout the day to see if it might cast a shadow on any repair job upon which they are working, or indeed upon any part of their shop. To require defendants to follow the sun throughout the day in order to attempt to prevent it from casting a shadow in some part of their shop, or to warn a person in the shop against the shadows of the sun would be to impose a highly impractical and unjustifiable legal burden upon any property owner. Moreover, the fact that one employee and the defendants had on a previous occasion struck their head on this plank while working on the repair of an automobile, neither proves negligence on the part of defendants nor absolves plaintiff from contributory negligence.

In *Druding v. Philadelphia*, 374 Pa. 202, 97 A. 2d 365, this Court entered a judgment n.o.v. because of

plaintiff's contributory negligence. He dove into a city pool which was then about 2 feet deep and which was being drained although about 65 to 100 people were still using it. No sign or warning was given by the city to persons using the pool that it was being drained. Plaintiff had not been in a swimming pool for approximately 26 years. The language of that opinion* is equally applicable to the instant case:

". . . as Mr. Justice JONES said in McCreery v. Westmoreland Farm Bureau, 357 Pa. 567, 570, 55 A. 2d 399: 'There is no duty, however, upon the possessor of land to warn or guard a business invitee against a danger that is obvious.'

" 'No person is required to take extraordinary precautions to save adults in apparent possession of their reasoning faculties from the consequences of their own inattentiveness and carelessness. . . "Everyone has a right to proceed upon the assumption that those to whom he owes a duty of care are normal in every respect and prepared on their part to exercise the care of prudent persons generally" ': Jefferson v. Y.M.C.A., 354 Pa. 563, 567, 47 A. 2d 653.

. . .

" 'What this court stated in Bailey v. Alexander Realty Co., 342 Pa. 362, 20 A. 2d 754, applies to the instant case: ". . . When an individual can assure his own safety by the use of his senses, he must do so or abide the consequences of his carelessness . . . The duty of availing oneself of one's senses, for self-protection can seldom be breached with physical impunity and never with legal sanction . . . The rule that a victim cannot recover damages for injuries sustained by him if he could have avoided the injury by the exercise of ordinary care bars this plaintiff's recovery:" ' Bartek v. Grossman, 356 Pa. 522, 525, 52 A. 2d 209.

---

* Pages 204-205.

" 'A person may not recover for injuries which are received as a result of a failure on his part to observe and avoid an obvious condition which ordinary care for his own safety would have disclosed': Boock v. Acme Markets, Inc., 347 Pa. 501, 503, 32 A. 2d 759; Rogers v. Max Azen, Inc., 340 Pa. 328, 16 A. 2d 529."

The judgment is reversed and is here entered for the defendants non obstante veredicto.

---

### DISSENTING OPINION BY MR. JUSTICE BOK:

There is no doubt that plaintiff was an invitee. He was not on the premises on automotive business, and he always used the same door. A daily iceman was held to be one in *Robb v. Niles Bement-Pond Co.*, 269 Pa. 298, 112 A. 459 (1921). So was a waiting salesman, in *Hartman v. Miller*, 143 Pa. Superior Ct. 143, 17 A. 2d 652 (1941).

One does not ordinarily expect to meet a plank suspended five feet in mid-air.

The majority is based entirely on the idea that this plank was obvious. This is contrary to the evidence. Plaintiff testified: "Q. Was it visible? A. . . . the car was dark and this plank was dark and there was shadows . . . it seemed much darker there between the car than in the rest of the building. Q. You mean between the car and the wall than in the rest of the building? A. That's right."

Plaintiff had gone to the garage six days per week for six months. He testified: "Q. Had you ever seen previously this plank sticking out of any automobiles? A. Never. Q. Had you ever previously seen any tools on the floor there? A. Definitely."

There is also evidence that two of defendants' employes had bumped into the plank and hurt themselves a short time before; they mentioned five or six times.

Another employe, Dean Agnew, hit the plank with his head earlier in the day on which plaintiff did.

What is so obvious about such a plank?

It becomes even less obvious when we consider the condition of the floor.

The automobile was only three or four feet inside the door where plaintiff entered. The plank stuck two feet out of its windows into the aisle between it and the wall. Plaintiff properly looked where he was going and saw tools in his path. He then said: "A. I looked down and *I was picking my way over these tools* and I collided with this plank. Q. Did you see the plank before you collided with it? A. No, I didn't." (Italics mine)

With so many tools on the floor in his path that he had to pick his way over them, the obviousness of the suspended plank became minimal. It was as effectively hidden as a substantial and tortious defect in the pavement that has been covered from view by wind-blown rubbish.

It is common human experience that people expect injury less from above than from below. The area one walks on requires a person's major obligation to look: what may be hanging in the air requires a lesser obligation since less of an injurious nature is generally found there. Where danger exists both above and below, it should be for a jury to say how effectively a man has divided his attention and whether defendants protected him adequately, especially where the dangerous object aloft is also dark against a dark background and in shadow.

Precedents upholding liability in odd situations are: *Bloomer v. Snellenburg,* 221 Pa. 25, 69 A. 124 (1908), a sudden and unexpected drop in floor level in a store; *Johnson v. Rulon,* 363 Pa. 585, 70 A. 2d 325 (1950), an open trap door in the floor of a restaurant;

*Wood v. Lit Brothers,* 173 Pa. Superior Ct. 4, 94 A. 2d 69 (1953), the absence of a glass panel in a door; *Kanner v. Best Markets, Inc.,* 188 Pa. Superior Ct. 366, 147 A. 2d 172 (1958), the presence of a glass panel which plaintiff had reason to treat as an open entrance: *Schaublin v. Leber* (N.J.), 142 A. 2d 910 (1958), the protruding open window of a parked station wagon.

The opinion in *Johnson* is especially apt. The present Chief Justice said: "The opening in the floor, while not entirely hidden, was largely obscured from the plaintiff's view by the music box, as he walked back between the music box and the lunch counter. . . . Such being the case, it could hardly be said, as a matter of law, that *the bill of fare for the day emblazoned on the wall* of a public eating house is not a sufficient attention-arrester to excuse an invitee for having looked up from where he was about to take his next step." (Italics mine)

If an attention-arrester can be up, it can also be down, a fortiori since down is where, generally, one must look for trouble.

It seems gravely unjust to deprive this man of his verdict under such circumstances. I would let him keep it.

Mr. Justice MUSMANNO and Mr. Justice MCBRIDE join in this dissent.