Allison *v.* Snelling and Snelling, Inc., Appellant.

Submitted November 17, 1966.   Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused June 23, 1967.

*E. Dyson Herting*, with him *James Lewis Griffith*, and *Liebert, Harvey, Bechtle, Herting & Short*, for appellant.

*S. Khan Spiegel*, with him *Leon W. Silverman*, for appellee.

OPINION BY MR. JUSTICE O'BRIEN, May 2, 1967:

This case was brought under the wrongful death and survival statutes of the Commonwealth of Pennsylvania by Maude C. Allison, widow of the decedent and administratrix of his estate.  After a trial lasting 5 days, the jury returned a verdict in favor of plaintiff in the amount of $65,000.  This verdict, rendered in a lump sum, was eventually molded into separate sums; $62,000 in the wrongful death action, and $3,-000 in the survival action.  The defendant thereafter filed motions for judgment n.o.v. and new trial.  The

motions were denied, and in conjunction with the denial, a remittitur was ordered in the amount of $5,000 on the wrongful death verdict. The remittitur was filed, judgment was entered on the verdicts, and these appeals followed.

On September 24, 1960, the defendant, Snelling and Snelling, Inc., was a tenant on one of the upper floors of a building located at 1501 Walnut Street in Philadelphia, the building containing a single elevator shaft and car, the regular operator of which was plaintiff's decedent, employed by the building owner. At approximately 8:50 a.m., a vice president of defendant arrived at the building, and, after waiting a short period during which decedent did not arrive to operate the elevator, took the elevator himself and went to his office. (Decedent was due at work at 8:00 a.m.) The decedent arrived a few minutes after 9:00 and, according to an eyewitness, rang the bell of the elevator several times, then removed the key to the elevator door from a box, partially opened the elevator door, took a step forward, and fell into an empty shaft some 15 to 18 feet to the basement of the building. Decedent was critically injured and died in a hospital one week later.

"In considering a motion for judgment n.o.v., the evidence together with all reasonable inferences therefrom is considered in the light most favorable to the verdict winner." *Connolly v. Phila. Trans. Co.*, 420 Pa. 280, 216 A. 2d 60 (1966); *Lewis v. United States Rubber Co.*, 414 Pa. 626, 202 A. 2d 20 (1964); *Pritts v. Wigle*, 414 Pa. 309, 200 A. 2d 386 (1964); *Chambers v. Montgomery*, 411 Pa. 339, 192 A. 2d 355 (1963), and in reviewing on appeal, we stated in *Vignoli v. Standard M. Freight, Inc.*, 418 Pa. 214, 210 A. 2d 271 (1965): "The grant or refusal of a new trial will not be reversed on appeal, absent an abuse of discretion or error of law which controlled the outcome of the case."

The defendant's primary argument in the court below and on behalf of his motion for judgment n.o.v. was that plaintiff was contributorily negligent as a matter of law. The court below concluded that the testimony created a question for the jury and amply supported the verdict. With this conclusion we cannot agree.

The testimony of James T. Clark, an electrical engineer, reveals that the area surrounding the elevator door was not adequately illuminated, and this, along with the presumption that the decedent exercised due care for his own safety, provided the basis for the lower court's denying defendant's motion. In *Murphy v. Bernheim & Sons, Inc.*, 327 Pa. 285, 194 A. 194 (1937), we said: "When one is moving in the dark he must proceed with the greatest caution and literally 'feel his way around.'" In *Murray v. Earl*, 282 Pa. 517, 520, 128 A. 436 (1925), we said: " 'Where the entrance is dark, it would seem that ordinary care would condemn the act of a person who steps into an elevator shaft [knowing its location] without satisfying himself that the elevator is there.'"

As we said in *Bailey v. Alexander Realty Co.*, 342 Pa. 362, 20 A. 2d 754 (1941): "The grievous error which plaintiff made was in accepting his reasoning faculties as the sole assurer of his safety. In the absence of sufficient light to enable him to see into the shaft he *assumed* that *because* the outer door was movable the elevator must be there. He thus placed improvident reliance on the perfection of the door-locking mechanism and on defendant's supervision of it. No man of common caution will rely for his safety upon the watchfulness of others when his own senses are available to apprise him of likely imminent danger. When an individual *can* assure his own safety by the use of his senses, he *must* do so or abide the consequences of his carelessness." (Emphasis in original)

In *Douville v. Northeastern W. Co.*, 337 Pa. 188, 10 A. 2d 394 (1940), we said: ". . . a person who approaches an elevator or an elevator shaft in a place so dark that scarcely anything is visible does so at his own risk and if, while thus enveloped in darkness, he is injured by colliding with an object or falling into a hole, he will be adjudged guilty of contributory negligence as a matter of law. *Hoffner et ux. v. Bergdoll*, 309 Pa. 558, 164 A. 607." See also *Bream v. Berger*, 388 Pa. 433, 130 A. 2d 708 (1957); *Brewster v. Morrone*, 395 Pa. 642, 151 A. 2d 607 (1959).

It is to be noted that no one, aside from the decedent, was permitted to operate the elevator, and that the vice president of the defendant in doing so violated this rule. His testimony reveals that he removed the key, unlocked the elevator, and took it to the desired floor. Assuming that this conduct was negligent, we are still faced with decedent's conduct and whether his activities constitute contributory negligence as a matter of law.

Mrs. Allison, decedent's widow, was also employed by the building owners as a cleaning woman. Mrs. Allison testified that in addition to her duties as cleaning woman, she also operated the elevator when decedent was on vacation. She testified that the decedent had been employed by the building owners for 9 years the very day the accident occurred, and that the night prior to the happening of the accident, she, in the same manner as was customary, after cleaning the building, took the elevator to the first floor, left the inner gate open, as the outer door could not be operated if the inner gate were completely closed. She went on to relate the procedure for opening the elevator doors in the mornings in the following manner: It was necessary to get the key from a box near the door to open the heavy outer door. Pressure was applied downward on this key, and the door moved a few inches, and then

the key would be removed. (Mrs. Allison testified at this point that there was sufficient light in the lobby to enable determination of whether the car was there and, although her husband wore glasses, he was quite capable of seeing.) After opening the door a few inches, the key would then be removed and the operator would use both hands to open the heavy outer door the rest of the way.

The record reveals that the decedent entered the building when lighting conditions were such that an eyewitness, George L. King, stated: ". . . I was able to read my paper by it very easily." He further reveals that the decedent entered the building and came over alongside of him as he was standing by the elevator. He related that decedent rang the bell several times, then stated: "Ray must be in." (the only logical inference that can be drawn from this remark is that he was referring to Louis R. Snelling, whom he knew as "Ray"), obtained the key from the box, went back to the elevator and opened the door while the witness was standing beside him. The witness further related that after decedent had inserted the key and opened the elevator door, he took a step forward and then disappeared. Mr. King, on cross-examination, related also that he had seen other tenants operate the elevator at various times.

In this connection, Mrs. Allison testified that if a person pushed the elevator button which controlled the buzzer, a buzzer sounded in the elevator car, and that a person pushing the buzzer button in the lobby could hear the buzzer sounding in the elevator car, even though the heavy outer door of the elevator was closed, when the elevator was as far away as the 4th or 5th floor of the building, albeit faintly. In such circumstances, it strains credulity to believe that the decedent, who had operated this elevator for a period of 9 years and who must have been thoroughly familiar

with its operation, could be unaware that the elevator car was not at the first floor. The testimony is that he rang the bell several times. That being the case, he must have heard the faint sound of the buzzer sounding in the elevator car, which was then on the 4th floor, and knew, or should have known, that the car was not at the lobby level.

We have often said that there is a presumption that a person killed in an accident exercised due care. However, as we said in *Watkins v. Prudential Ins. Co.*, 315 Pa. 497, 173 A. 644 (1934): " 'Presumptions of fact are at best but mere arguments, and are to be judged by the common and received tests of the truth of propositions and the validity of arguments': . . . 'A presumption itself contributes no evidence, and has no probative quality. It is sometimes said that the presumption will tip the scale when the evidence is balanced. But, in truth, nothing tips the scale but evidence, and a presumption—being a legal rule or a legal conclusion—is not evidence. . . .' " In *Heath v. Klosterman*, 343 Pa. 501, 504, 23 A. 2d 209 (1941), we added: ". . . a presumption such as this is not evidence, and it cannot be weighed as evidence, since it gives way the moment proof to the contrary is presented." In *Rank v. Metropolitan Edison Co.*, 370 Pa. 107, 87 A. 2d 198 (1952), the administratrix of the estate of her decedent husband brought an action against Metropolitan Edison Company to recover under the wrongful death and survival acts, alleging that her husband's death was caused by the defendant's negligence. In that case, we said: "The presumption that a person who has lost his life exercised due care is not applicable where the plaintiff's own testimony clearly establishes the decedent's negligence: Weldon, Admrx., v. Pittsburgh Railways Company, 352 Pa. 103, 41 A. 2d 856; Simmonds v. Penn Fruit Company, 354 Pa. 154, 47 A. 2d 231. The instinct of self-preservation upon which

the presumption is founded, was conspicuously absent here. The decedent's unfortunate death was caused by his own unjustifiable conduct."

We must conclude therefore, in the instant case, as in the *Rank* case, supra, that decedent's death, although unfortunate, came about as a result of his own conduct, and as a matter of law, decedent was contributorily negligent. Reaching this decision, we need not, nor do we, consider any of the other issues raised by appellant in the instant case.

Judgments reversed and here entered for defendant, notwithstanding the verdict.

Mr. Justice ROBERTS dissents.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

It is enough to read the Majority Opinion in this case to perceive at once the stark injustice being proclaimed by the decision it announces.

Leroy N. Allison was employed as an elevator operator in a single-elevator building at 1501 Walnut Street, Philadelphia. The defendant firm, Snelling and Snelling, occupied offices on the fourth floor. Every tenant in the building had been warned that no one, except a licensed operator, was authorized to operate the elevator. On the morning of September 24, 1960, Robert Snelling, vice president of the Snelling firm, arrived at the building between 8:30 and 9. The elevator door was locked. He obtained from a box attached to the wall of the building a rod which he used to unfasten the lock of the elevator door. He restored the rod to its depository and then drove the elevator to the fourth floor, stepped out, and let the elevator remain there on the fourth floor, suspended like Mahomet's coffin.

The rod on the first floor would allow anyone familiar with the building's maintenance to conclude that the elevator was duly anchored in the shaft on the

ground floor. Shortly after Robert Snelling had improperly removed the elevator, Leroy Allison, the duly licensed and employed elevator operator, arrived. Having every reason to assume that the elevator car was in its accustomed place on the first floor, he inserted his key into the lock of the shaft door and stepped into what he thought would be the floor of the elevator. It was not there and he plunged down in the empty shaft to his death 20 feet below.

His widow brought suit against the Snelling firm and the jury returned a verdict in her favor in the sum of $60,000. The defendant firm appealed and this Court has rendered judgment n.o.v. stating that Allison was guilty of contributory negligence as a matter of law.

Robert Snelling's action in taking the elevator without authority was an act of flagrant negligence, endangering the life and limb of anyone heading for an office above the ground floor. Not only did Snelling violate the law in possessing the elevator, but he compounded his offense by not warning others in the building of what he had done. He posted no sign, he asked no one to seal off the ground floor door of the elevator shaft so that no one should enter into it.

When Allison arrived in the building, there was nothing to suggest to him that the elevator would not be where he had always found it when he came to work in the morning. He used his key to unlock the elevator door, as he had always done, and stepped into what he thought would be the elevator, as he had been doing for the nine years that he was employed as elevator operator. Never before had the elevator failed to be at the first floor. Undoubtedly to him it would be as astonishing that the elevator should not be there as that the building should have disappeared overnight.

The Majority says that Allison was guilty of contributory negligence as a matter of law. Was he? Is

it irrefutably contributory negligence for one to assume that his fellow-man will not push him into a deep pit and kill him? Is it compulsorily conclusive contributory negligence for one to assume that no one will be so brutally careless as to take away the floor of a scaffold without notifying others, who have every reason to assume the floor will be there? What the Majority is imposing here is not contributory negligence to be decided by a jury, but contributory negligence which is so absolute that no reasonable persons could disagree as to its existence. That is the stand the Majority takes. Allison, so far as the Majority is concerned, practically walked with open eyes into a suicidal death. The record does not support so arbitrary a determination.

The Majority Opinion quotes the stereotyped rule that " 'In considering a motion for judgment n.o.v., the evidence together with all reasonable inferences therefrom is considered in the light most favorable to the verdict winner,' " but the Majority ignores the very light it assertedly ignites. There was testimony, on the side of the plaintiff's case, that the elevator shaft was not well illuminated. An electrical engineer testified that the area surrounding the elevator door was dimly lit. The jury, by its verdict, found that the shaft was not adequately illuminated. But the Majority apparently brought so much light to the evidence, in considering it in favor of the verdict winner, that it had enough left over to illuminate the elevator shaft. This illumination, however, was not seen by the jury which, in addition to hearing the evidence in court, went to the scene of the accident and physically evaluated what the Majority has imaginatively surmised. Not only did the jury see the elevator shaft and the surrounding area, but it heard evidence at the very point of the accident as to the conditions existing at the time of the accident. The trial judge, passing on this feature

of the case, said: "The jury observed the actual location of the accident and heard testimony that the lighting condition which they saw was the same at the time that decedent was injured. The jury could well have drawn the inference that decedent walked into a dimly lighted area believing the elevator to be at ground-floor level and in the exercise of his best judgment proceeded into the empty shaft."

But the Majority of this Court, without seeing the elevator, without knowing the physical circumstances, declares that it will decide this case in the light most favorable to the verdict winner and then proceeds to extinguish the lantern of the evidence. Sitting on the Fourth Floor of City Hall, the Majority maintains that it can see through all the bricks, stone, marble, steel and mortar which intervene between City Hall and 1501 Walnut Street, and perceive what the jury on the scene did not see. The Majority maintains it can penetrate through the wall of six years, which has risen since the accident happened, and reconstruct, from the printed page, the circumstances of the accident, more accurately than those who were there when it happened and who testified to it in court before a judge and twelve jurors who confirmed what the witnesses said by visiting the scene of the accident. This is judicial clairvoyance to which I cannot subscribe.

What the Majority has done here is to render not a judgment *non obstante veredicto,* but judgment *non obstante testimonium.* It had rendered a judgment in spite of the *evidence!* There is absolutely nothing in the case which offers a modicum of rationalization to the Majority's far-fetched theory. Indeed the evidence and all inferences logically derivable therefrom reject conclusively the Majority's hypothesis. The Majority speaks of George King who was standing beside Allison when the tragedy occurred, stating that King could read his newspaper by the light in the lobby of the

building. Whether he could read his paper has nothing to do with conditions inside or immediately outside the elevator shaft. King's testimony is self-defeating. If Allison was deceived about the presence or nonpresence of the elevator, so was King, because it is impossible to believe that King could have been so inhuman as to allow Allison to step into an empty elevator shaft if King knew the elevator was not there. If King could not see the elevator was not there, that makes two persons on the scene who were honestly deceived by the circumstances.

There is no question that Allison made a mistake but it was an understandable mistake; it was, so to speak, a logical mistake, an almost compelling mistake. For nine years, he had been inserting the key in the elevator door, for nine years he had started operations from the ground floor. Never in those nine years did he begin his work from the fourth floor, to which Snelling had, with unexcusable recklessness, taken the elevator that tragic morning. As stated, Allison was the only one who had the right to run the elevator. If he was not there, the tenants waited or walked. No one had the right to take away the elevator any more than a heedless air passenger would have the right to seize the controls in the cockpit of an airplane. Louis Snelling, brother of the self-propelling vice president of the defendant concern, did not take the elevator when he arrived (prior to Robert Snelling) and discovered that the operator was not there. Louis Snelling took to the stairs, as Robert could easily have done. The witness King arrived before Allison appeared on the scene. He made no effort to do what Robert Snelling had done. He waited for Allison's arrival.

At the very worst, from the plaintiff's point of view and in the eyes of the law, the most that can be said about the decedent's conduct is that it was a question

of fact for the jury to determine whether he was contributorily negligent. Only an arbitrary exercise of intellect can conclude that a nine-year custom does not become an established fact. Montaigne observed, after Plutarch had said the same thing, that "Habit is a second nature."

Publilius Syrus remarked: "Powerful indeed is the empire of habit." Allison was a citizen of the empire of habit. Six days a week, 52 weeks a year for nine successive years, he took the key from a box, inserted into the elevator door, and stepped into the elevator. He did this continuously and without interruption for 2808 days. Can it be said that, because on the 2809th day, he did not test what he had never had occasion to test or doubt before, he was so devoid of concern for his life that he must be branded by the law as negligent beyond reason?

The Majority Opinion speaks of situations where recovery was not permitted because the aggrieved person walked into an obvious elevator danger, but in those cases the sortie into the elevator shaft was a single occurrence. Those cases have to do with one who, in a strange environment, advanced for the first time into a hazardous situation. Here it was not a question of the first time; it was a matter of the 2000th time. If for 2000 consecutive days there is no rain, one cannot be blamed, if on the 2001st day, he steps out on a sunshiny day without an umbrella.

In addition, in many of the cases cited by the Majority, the victim moved into what amounted practically to complete darkness. That was not the case here. Here it was a matter of dim lighting, the kind of lighting, incidentally, which one observes in the Majority Opinion throughout, that is, a shadowy obfuscating, nebulous, opaque, umbrageous kind of lighting which misleads, without intending to. It is like a banana peel under a lettuce leaf.

For example, the Majority quotes from *Murphy v. Bernheim & Sons, Inc.*, 327 Pa. 285, as follows: "When one is moving in the dark he must proceed with the greatest caution and literally 'feel his way around.'" This is the lettuce leaf which gives the reader the idea that the plaintiff in that case did not recover because he moved in the dark. The Majority cites this case as an ally to its cause; in point of jurisprudential realism, it is not an ally but an armored foe, which, with the spear of logic, punctures the bubbles of illogic floating throughout the Majority Opinion. In the *Murphy* case, we *affirmed* the verdict returned in that case in favor of the elevator walker on the intelligent basis that he had been honestly misled, as was the decedent in this case. In a powerful opinion which brings crashing to the ground the whole wobbly structure of theorization in the Majority Opinion here, Justice (later Chief Justice) MAXEY said: "When one walks in dim light where he has no reason to apprehend danger and uses his best judgment as he proceeds, and then meets with an accident, the question whether or not he is guilty of contributory negligence is usually for the jury."

An elevator shaft, like anything else, can stand in three different types of luminosity. It may be enveloped in total darkness, it may shine forth in bright light, or it can remain half-concealed and half-disclosed like the Star Spangled Banner at Fort McHenry during the night of that historical bombardment. The elevator shaft at 1501 Walnut Street was in the third classification on the morning that Allison stepped into it. On a situation of that character, Chief Justice MAXEY said: "Where the elevator approach is but dimly lighted, a person may be justified in thinking that an elevator is at the floor when in fact it is absent. Under such circumstances, his contributory negligence is plainly a jury question," citing 9 R.C.L. sec. 23, page **1257.**

In the *Murphy* case the plaintiff had been instructed by his employer to make certain repairs to a skylight over an elevator shaft. In narrating the circumstances of the accident, Chief Justice MAXEY said: "he [the plaintiff] found the entrance thereto open and no guard or gate down, and believing the elevator lift to be level with the floor on which he was at that time, he walked through the opening and fell to the bottom of the elevator shaft."

If, in a situation like the one just described, the case is for the jury, how much more is it for the jury where the operator was deceived into believing the elevator was present because of the action of one who, unintentionally of course, laid a trap for him to be deceived. In explaining the probable state of mind of the plaintiff Murphy when he approached the elevator, the revered jurist of Lackawanna County said: "When one becomes accustomed after long experience to finding elevator shafts safeguarded, he naturally takes it for granted that *all* elevator shafts are safeguarded."

If Murphy, on his first visit to the elevator shaft in that case, was justified in concluding that the elevator shaft was safeguarded, how much more should Allison have had the right to assume that the elevator here was in its normal position when for nine years it had always been there?

In the *Murphy* case, Chief Justice MAXEY cited the case of *Kinsey v. Locomobile,* 235 Pa. 95, where this Court affirmed a verdict following a fall in an unguarded elevator shaft, stating: "the question of plaintiff's contributory negligence was necessarily submitted to the jury."

He cited also the case of *Baker v. Ellis,* 248 Pa. 64, also an elevator shaft case, where this Court said: "It would have been clear error for the judge to declare as a matter of law that the plaintiff was guilty of contributory negligence under the facts as they appear in the record."

The Majority is adept in quoting sentences from cases which completely devastate its theories. For instance, it cites *Douville v. Northeastern W. Co.*, 337 Pa. 188, and quotes: "a person who approaches . . . an elevator shaft in a place so dark that scarcely anything is visible does so at his own risk and if, while thus enveloped in darkness, he is injured by colliding with an object or falling into a hole, he will be adjudged guilty of contributory negligence as a matter of law."

It must take considerable astuteness to cite this "darkness" case in support of a case where the Majority says the lighting was so brilliant that one of the witnesses used the space around the elevator shaft as a reading library. As a matter of fact, this Court *affirmed* a verdict for the plaintiff in the *Douville* case, stating unanimously: "Under our decisions the case was for the jury and we agree with the statement made by the court below in refusing to enter judgment n.o.v.: 'The jury was justified in concluding that the entrance to the freight elevator was in a shadow, or in a very dim light.'"

In *Bailey v. Alexander Realty Co.*, 342 Pa. 362, also cited by the Majority, the plaintiff was denied recovery, but this Court stated: "If in semi-darkness he uses his sense of sight as carefully as he can and reasonably believes he can 'see his way' and if his sense of sight deceives him, he may or may not be guilty of negligence and the question will be for the jury. The law does not require a man to possess perfect vision in a setting of complete visibility before proceeding on his course."

The decedent in the case at bar was deceived not only by the dimness of the light in and about the elevator shaft, but by the stage manager of the drama which resulted in his death. The stage manager put back the rod with which he had opened the elevator door so as to have the decedent believe the elevator

was still there, he posted no sign that he had illegally taken the elevator and was holding it on the fourth floor like a guillotine to fall on the veteran worker beneath.

To deny to the plaintiff in this case the verdict so intelligently arrived at by the jury and so emphatically approved by the trial judge on an abstract theory which finds no substantiation in the record is to make a shambles of the institution of trial by jury and to freeze the law on the fourth floor of dialectics instead of descending to the ground floor of facts.